No. 60.—H. M. LATINE, plaintiff in error *vs.* MERIWETHER CLEMENTS, Adm'r. *de bonis non*, with the will annexed, of LUCY CLEMENTS, deceased, defendant in error.

[1.] In an action of debt, on a foreign judgment, with a single count, the writ is not amendable by inserting a count on the original cause of indebtedness on which the judgment is founded.

[2.] An action will lie against an administrator with the will annexed, in Georgia, on a judgment obtained in Virginia against an executor.

Latine *vs.* Clements, Adm'r.

Debt upon judgment rendered in the State of Virginia, against the executor of the testatrix, resident in that State, brought by the plaintiff in error, who was plaintiff in the Virginia judgment, against the defendant in error, as administrator, &c. of the same testatrix, in the Superior Court of the county of Franklin.   Tried before Judge DOUGHERTY.   April Term, 1847.

For the facts of the case and the error assigned, see the opinion delivered by the Supreme Court.

MITCHELL & FREEMAN, for the plaintiff in error.

HILLYER, for the defendant in error.

*By the Court.*—NISBET, J., delivering the opinion.

The facts in this case are as follows.  Lucy Clements died testate in the State of Virginia, having, in her will, appointed an executor, who qualified and took upon himself the execution of the trust, according to the laws of that State.   The plaintiff in error, H. M. Latine, being a bond creditor of the testatrix, instituted suit, and obtained a judgment against the executor in Virginia.   The testatrix having effects in this State, Meriwether Clements, the defendant in error, applied to, and obtained from, the Court of Ordinary of Franklin county, letters of administration with the will annexed, upon her estate.   The plaintiff in error brought an action of debt against the administrator with the will annexed, on the judgment against the executor, from the State of Virginia.   The judgment, on the trial, being tendered in evidence by the plaintiff, was demurred to, on the ground that no action will lie in this State against the administrator with the will annexed, upon a judgment in Virginia against an executor to the same will, and the plaintiff must resort to an action upon the bond upon which that judgment was founded.   Judge Dougherty, presiding in the Court below, sustained the demurrer.   To that decision, the plaintiff in error has excepted, and thus the main question in this case is made.

There is, however, another question made by the bill of [1.] exceptions; it is founded on the refusal of the Court below, to allow the plaintiff to amend his writ by adding a count on the original evidence of indebtedness.   About this, we entertain no

doubt. The amendment was properly refused. The Court below was of opinion that no action could be sustained upon the judgment, and so ruling, the plaintiff was wholly out of court; there was nothing to amend by. It is true, that the writ disclosed the fact, that the judgment was founded on a bond—indeed, describes it—but all that was mere recital; there was no attempt made to count upon it; the action was debt on the judgment, and *that* alone; the plaintiff could not amend by substituting or adding an entire and independent cause of action. So far as this exception is concerned, we do not find error in the record.

[2.] We find upon the other question, no adjudicated case upon a state of facts exactly the same with this. We have been guided in our judgment, therefore, by analagous cases, and general principles.

It may be stated, as a general proposition, that judgments rendered by a court of competent jurisdiction, and not tainted with fraud, are conclusive upon parties and privies. There are limitations to this general rule which I need not now stop to notice. It is also true as a general rule, that an action may be sustained upon a *foreign* judgment, to enforce it in a different jurisdiction. The weight of authority, in England, is to the effect, that a foreign judgment *in personam*, rendered without fraud, by a court of competent jurisdiction, is not only *prima facie* but conclusive evidence, of a debt due. There, however, as to this point, the authorities are in conflict. See 1 *Greenl. Ev.* 604, 605, 606, 613; 1 *Barn. & Adolph*, 459; 2 *id.* 951; 3 *Sim.* 458; 8 *id.* 279, 302; 5 *Clark & Finnell*, 1, 20, 21; *Story Conf. Laws*, 545 *to* 550; 2 *Swanst. note*, 326, 327; *Cas. Temp. Hard.* 89; 1 *Vesey R.* 157. That a foreign judgment is not conclusive, see *Doug.* 1; *Willis R.* 36, *note*; 11 *East R.* 118; 3 *Swanst. R.* 703, 711, 712; 2 *H. Black.* 410; *Doug. R.* 6, *note* 3.

The general doctrine maintained in the United States is, that foreign judgments *in personam*, are *prima facie* evidence, but that they are impeachable. How far, and to what extent, they are liable to impeachment, does not seem to be settled. See 1 *Greenleaf Ev.* 614; *Story Conf. Laws, sec.* 608; 2 *Kent Com.* 119, 121; 1 *Phil. Ev. Cow. & Hill notes*, 353. The regard which the courts of one sovereign State pays to judgments rendered in the courts of other States, is founded in justice and expediency. Comity between States is necessary to commerce, progress in civilization, security of property, and national independence. Hence, for the most

part, according to the laws and customs of nations, judgments receive abroad the *faith* and *credit* which they are entitled to at home. The States of our Union are, with some limitation, sovereign States; they are sovereign, except in so far as they have surrendered their sovereignty to the General Government; upon the general principles already adverted to, touching judgments, they are to be treated as foreign States, yet, their mutual relations are rather those of domestic independence, than of foreign alienation. *Mills* vs. *Duryee*, 7 *Cranch*, 481; 3 *Wheat.* 234. But the constitution has not left the force and effect of the judgments of one State, to be determined upon general principles in the other States; it has declared what shall be their force and effect; it provides, "that *full faith and credit* shall be given in each State to the public acts, records and *judicial proceedings* of every other State." *Const. U. S. arts. 3 and 4.* Congress has declared what the constitution means by *full faith and credit*; it has enacted that the judgments of State courts shall have the *same* faith and credit in other States, as they have in the State where they are rendered. *Act of Congress of 26 May*, 1790, *ch.* 11; 3 *Story Com. on the Const., ch.* 29, *sec.* 1297 *to* 1307. They are put upon the same footing with domestic judgments; but this does not prevent inquiry into the jurisdiction of the court in which the original judgment was rendered, or into the right of the State to exercise authority over the parties or the subject matter; or the inquiry whether the judgment is founded in fraud. The constitution confers no new power on the States, but regulates the *effect* of their acknowledged jurisdiction over persons and things within their territory. It does not make the judgments domestic to *all* intents and purposes, but gives general validity, faith and credit to them, as *evidence*. *Story Conf. of Laws, sec.* 609; *Story Com. on the Const., ch.* 29, *sec.* 1297 *to* 1307, *and cases there cited*; 8 *Johns. R.* 173; 6 *Pick. R.* 237; 9 *Mass. R.* 462; 6 *Wend. R.* 447; 9 *Serg. & Rawle* 260; 10 *id.* 240; 1 *Hall Sup. Court R.* 155; 2 *id.* 302, 358; 4 *Con. R.* 380.

By the principles stated, we are conducted to the conclusion that the judgment from Virginia, upon which this action was brought, upon general principles, but more especially by the constitution and laws of the United States, is put upon the footing of a domestic judgment *as evidence*, and that in Georgia it is entitled to the *same faith and credit* that it receives in Virginia. The next inquiry, therefore, is, *what* faith and credit is it entitled

to in that State? I know of no statute law of Virginia which defines the faith and credit to which it is there entitled. The common law is there of force, and we are remitted to *that* to answer the last question. *There*, by the common law, it is binding upon parties and privies, and may be enforced by execution or *scire facias;* if there binding upon parties and privies, it is also *here* binding upon parties and privies. If it may there be enforced by execution or *scire facias*, it may be enforced *here* by action. This judgment is against the executor in Virginia; the suit here, is against the administrator with the will annexed; the *parties* then, are not the same. Is the administrator with the will annexed, a privy to the defendant in the judgment, the executor in Virginia? or, rather, had administration with the will annexed been 'taken out in Virginia, after the decease of the executor, he leaving no executor, would there have been privity between the executor and the administrator? The question is reduced to *that*, for if there would be in that state of the case, privity in Virginia, the judgment, according to common law principles, could be there enforced against the administrator; *that* would be the *faith and credit* which it would have in that State, and to the same faith and credit, it is entitled in Georgia.

The term *privity*, denotes mutual and successive relationship to the same rights of property. 1 *Greenl. Ev.* 590, 228. There are privies in estatè, privies in blood, and privies in law. The last class, to wit, privies in law, are also designated as privies in representation, as executors and testator, administrators and intestate. If there is privity in the case before us, it is the privity of representation. There was privity, unquestionably, between the testatrix, Mrs. Clements, and her executor. So there always is between executors and administrators, and their testator or intestate. Before proceeding further, it may be proper to state, that the execu-' tor derives all his power from his appointment in the will; *that* is the law of his action; he represents the *person* of the testator, and acquires the legal title to the whole of his personal estate; he can sue and be sued, and has the right of defence co-equal with that of the testator, whilst in life; he is, emphatically, the personal representative of the testator; his duties are not imposed by law, and his powers are not derived from the Ordinary, they are delegated to him by the testator. 2 *Wills. Ex'rs.* 664 *to* 681; *Nap* vs. *Van Swearengen*, 7 *Sergt. & Rawle* 192

Now, an administrator *de bonis non*, is the only representative of

the original deceased. He has the same powers as to the estate left unadministered, which the original representative had. He succeeds to all the rights and obligations which appertain to the original executor or administrator, in his representative capacity. 2 *Wills. Ex'rs.* 695 ; 1 *B. & C.* 154, *by Bayley, J.* ; 1 *Wills. Ex'rs.* 656, 657, 658. All this is eminently true of an administrator with the will annexed. He derives his authority to act from the will ; he is bound to follow its directions ; it is the law of his trust. He derives his appointment from the Ordinary, it is true, and the executor receives his letters testamentary, also, from the Ordinary, but the will is the rule of administration for both. The probate of the will, and the qualifying of the executor, and the appointment and qualification of the administrator with the will annexed, are merely conditions precedent, which the law imposes, to the exercise of the trust. The authority to act, flows, in either case, from the testator. Now, the executor is in privity with the testator ; so is the administrator with the will annexed ; and if both are in privity with the common testator, it is difficult to imagine that they are not in privity with each other. In the case supposed, of an executor in Virginia dying intestate, and an administration *de bonis non, cum testamento annexo*, is not the administrator the *successor* of the executor ? Does he not succeed to all the rights as trustee, which belonged to the executor, as such ? Is not the administration of the executor, so far as it is perfected. according to the provisions of the will, binding on the administrator ? To my mind, this is a plain case of *successive representation*, and therefore, of privity in law. If, in such a case in Virginia, there is privity, then a judgment obtained in that State against the executor in such a case, could be enforced by *scire facias* there, against the administrator ; and if it could, then it is entitled to the *same* faith and credit in Georgia, and may be enforced here against an administrator with the will annexed, by suit. It is evidence of a debt due as much in Georgia as it is in Virginia.

Is the law of *this* case different, because of the fact that it is not the case supposed ? *This* is the case of a will, and an executor, and a judgment against him in Virginia, and an administration with the will annexed in Georgia. The administration in Georgia is necessary, because the Virginia executor has no power to act in Georgia ; the two States are sovereign, and as to each other, foreign. But in *this* case the same things are true as stated concerning the hypothetical case. The will is the law as to both

trustees; both are in privity with the testator. The execution of the will in Virginia, so far as it has gone, is binding upon the administrator in Georgia; and the rights of creditors, perfected against the executor in Virginia, are perfect rights in Georgia against the administrator. The remedy to enforce them may be different—in this case is different. As to *remedies,* the law of the forum governs; but it is well settled that the law of the State where a testator is domiciled, governs the execution of his will, the descent of his property, and the settlement of his estate so far as concerns personal property. As to realty, the law of the place where the property is situated, governs. Mr. Story lays down the rule as to personal property as follows: "It may be stated now to be a well settled principle of English law, that a will of personal or movable property, regularly made according to the forms and solemnities required by the law of a testator's domicil, is sufficient to pass his personal or movable property in every other country in which it is situated." *Story Confl. of Laws* 391; *Hunter* vs. *Potts,* 4 *T. R.* 184, *& note; 2 Vesey & Bea.* 127, 131; 1 *Vesey R.* 192; 8 *Sim. R.* 279, 299, 300; 4 *Hag. Eccles. R.* 346, 354; *Robertson on Successions* 99, 191, 214, 215, 285, 290, 297; 2 *Bos. & Pul.* 229, *note; 5 East R.* 130; 3 *Hag. Eccles. R.* 373 *to* 465; 1 *Binn. R.* 336; 4 *Johns. Ch. R.* 460, 469; 1 *Mason R.* 381; 3 *Cranch* 319; 2 *Har. & Johns. R.* 193, 224; 12 *Wheaton R.* 169; 9 *Peters R.* 483, 504, 505. As to immovable property, see the subject discussed at large, and the rule as above recognised in *Story Confl. of Laws* 398 *to* 403. The conclusion to which I arrive from these two last propositions is, that the will of Mrs. Clements must be enforced in Georgia as in Virginia; that the two representatives are subject to the same law—*the will:* and also, that the will itself is to be executed by both, by the same laws, that is to say, according to the laws of Virginia, where the testatrix was domiciled.

It does not appear from this record that there, is any provision in Mrs. Clements' will, in relation to real estate, in conflict with any law of Georgia relative to that species of property. The conclusion therefore that the laws of Virginia govern the execution of this will in Georgia, is a legitimate one. This reasoning is to establish privity, and is aside from the previous view of the subject, taken under the constitution and laws of the United States.

Again, the executor in Virginia represented *the person* of the testator, with all rights of defence against the plaintiff's demand which he could have had if in life. That being the case, a judg-

ment passing against him binds his estate as evidence the world over, as fully as if it had been rendered against him in life.

The courts here will presume that the court in Virginia having jurisdiction, did its duty, and also that the executor did his, and therefore that the judgment was rightfully rendered; and, being authenticated according to the Act of Congress, it appears before this Court, and did appear before the Court below, as a valid, subsisting judgment.

The case of *Lightfoot* vs. *Bickley*, reported in 2 *Rawle R.* 431, relied upon by counsel for the defendant in error, establishes the doctrine that a judgment obtained against an *administrator* in one State will not support an action against another *administrator* in a different State; because, in contemplation of law, there is no privity between them. The case relied upon from South Carolina, 2 *Hill Ch. R.* 611, was also between administrators, and recognises the same doctrine. It is also admitted by Mr. Story in his Conflict of Laws; also ruled in the case of *Yates* vs. *Gough, Yelverton R.* 33. These authorities I do not controvert; and remark about them, that the case of two administrators, each deriving his authority from the Ordinary of different States, is very different from this case, where there was an executor, and an administrator with the will annexed, both deriving their authority from the testator through his will. In the former case it is admitted that there is no privity, and in the latter I have endeavoured to show that there is privity. Indeed, inasmuch as those cases went upon the ground that there was no privity, the inference is a fair one, that in cases where there is privity the action will be sustained. But my object in referring to the case in 2 *Rawle*, was to quote the opinion there expressed by Chief Justice Gibson, " that if the administrator represented the *person* of the intestate, without qualification or restriction, the argument in favour of the sustainability of the action would be incontestable." But the *executor* of Mrs. Clements did represent the person of his testatrix; therefore, upon the authority of this able Pennsylvania jurist, the action is sustainable upon this judgment. Reverse the position of this case—suppose the action had been brought, not upon the judgment but upon the original bond on which it is founded; could not the defendant have plead, that by the judgment rendered on it against the executor in Virginia, it had passed *in rem adjudicatam*, and was extinct? The question raises serious doubts, to say the least of it. If such a plea be a good plea, and at the same time no action can be sus-

tained on the judgment, then this case presents the rare and odious illustration of a right without a remedy—a thing which is really absurd in a land of laws ; and an absurdity in morals, as well as in mathematics, is never true.

But we are not wholly without authority to sustain our judgment, in this case, as I will proceed to show.    There are cases analagous in principle to this case, decided in England.    At common law, an administrator *de bonis non* could not have *scire facias* upon a judgment obtained *by* the original executor or administrator ; and the reasons given are, that the administrator *de bonis non* comes in paramount to the judgment, and is not a party thereto.    But now by *Statute* 17, *Car. II. ch.* 8, *sec.* 2, " where any judgment after a verdict shall be had, by or in the name of any executor or administrator, in such case an administrator *de bonis non* may sue forth a *scire facias*, and take execution on such judgment."    *Schley Dig.* 246.    This statute is of force in Georgia ; under it, it has been determined in England, that where an executor or administrator obtains a decree and dies, the administrator *de bonis non* may revive the decree.    1 *Wills. Ex'rs.* 644 ; 2 *Vernon* 23.

But although this was the rule of the common law as to judgments *by* executors and administrators, such was not the rule as to judgments *against* them ; for in these last cases the creditor might have *scire facias* against the administrator on them.    The reason given is, that the administrator *de bonis non* comes in in place of the testator, and is liable for his debt—in other words, there is privity, between the executor and the administrator *de bonis non*. The case of *Norgate* vs. *Snape, W. Jones R.* 214, and also reported in *Croke Car.* 167, determines this principle.    In that case, a man recovered in debt on obligation against an executor ; the executor died intestate, and administration *de bonis non* was taken ; the creditor sued out *scire facias* against the administrator *de bonis non*; he pleaded *plene administravit ;* the plaintiff replied that he had assets of the testator, and there was a finding for him.    It was then moved to arrest the judgment, on the ground that the judgment against the executor was determined by his death without will, and therefore there was no privity to authorize the *scire facias*. Jones, Whitlock & Croke, Js, said, " It seems that this is well enough, for there is a difference between a judgment *by* and *against* an executor."    Judgment was given on the motion accordingly.    This case, in principle, is a direct authority, and is like the one at bar precisely, except that instead of a *scire facias* to

enforce a domestic judgment, we have a suit to enforce a foreign judgment.

So also it has been decided by the Court of Errors of New York, that a writ of error would lie to reverse a judgment *against* an executor in favour of an administrator *de bonis non*.   That could not be, unless he is injured by the judgment and the record shows it, or is a party or privy to it ; for no other persons can bring the writ of error.   8 *Cowen R.* 333; 1 *Arch. Pr.* 209.   Further, " it seems to be clearly settled," says Chief Baron Gilbert, " that if an administrator *durante minore œtate* of an executor, brings an action and recovers, and then his time determines, the executor may have *scire facias* on that judgment.   1 *Wills. Ex'rs.* 329; *Bac. Abr. title Ex'rs. (B. l.)* 3, *vol.* 3, *p.* 18; 1 *Roll Abr.* 888, 889 ; *Croke Car.* 227 ; 2 *Brownl. R.* 83 ; 1 *Vernon R.* 25.

So, if a man obtain judgment against an administrator *durante minore œtate*, of an infant executor, and afterwards the execcutor comes of age, a *scire facias* lies against him on the judgment. This case we hold analagous to the case at this bar.   1 *Wills. Ex'rs.* 336 ; *Sparks* vs. *Crofts*, 1 *Ld. Raym. R.* 265.

From all which, we are led to believe that the action in the Court below ought to have been sustained.   Let the judgment be reversed.