OWSLEY *et al.,* executors, *v.* BOWDEN *et al.*

1. Where a resident of Alabama has died testate, leaving in this State assets sufficient in amount to discharge the indebtedness of the testator to citizens of this State, and proceedings have been instituted by

Actions 1 C. J. p. 984, n. 18.
Courts 15 C. J. p. 986, n. 54.
Executors and Administrators 24 C. J. p. 1125, n. 14 New.
Limitation of Actions 37 C. J. p. 729, n. 13.

the executors of the testator in Alabama to declare an insolvency of the estate, a court in this State having equitable jurisdiction in the county in which the property and assets of the testator are situated may impound such assets, and by injunction prevent the removal of the property of the non-resident testator situated in this State, or the proceeds thereof, until judgment or decree can be had in the premises and the just debts of the testator to citizens in this State have been paid.

2. As to remedies, the law of the forum prevails. Consequently, in an action brought by creditors of a testator in the State of Georgia against his executors, the statute of limitations of Georgia will be applied, rather than the statute of limitations of the State of the testator's domicile.

No. 4683. FEBRUARY 20, 1926.

Equitable petition. Before Judge Munro. Muscogee superior court. December 23, 1924.

*T. H. Shanks, J. E. Chapman,* and *A. W. Cozart,* for plaintiffs in error.

*Hatcher & Hatcher,* contra.

RUSSELL, C. J. Quoting from the brief of the counsel for the plaintiffs in error, "L. F. Humber died testate in Russell County, Alabama, leaving a large amount of real estate in Alabama and Georgia, and owing a large amount of debts, and probably very much more than his estate could pay. The plaintiffs in error qualified as his executors in Russell County, Alabama, and the same executors qualified as such in Muscogee County, Georgia, under the statutes of Georgia, providing for such qualification. Under the laws of Alabama set out in the petition, it became necessary for creditors to file their claims and take certain steps required by the statutes of Alabama within a certain time, or else their claims were forever barred and unenforceable against the estate of the deceased in Alabama. The plaintiffs in the court below, who were creditors, failed to comply with the statutes of Alabama, and their claims were barred. They then filed the present action in the Muscogee superior court against the executors, who had qualified in Georgia, and sought certain equitable relief, and sought to recover a judgment against the executors as such in Georgia upon the claims which were barred in Alabama. The vital question to be determined in the case at bar is this: Having permitted their claims to become barred in Alabama, can the creditors maintain an action on those barred claims against the executors in Georgia?" This quotation from

the brief of counsel for the plaintiffs in error presents in a general way the question at issue; but it may be proper to set forth in more specific detail some of the contentions of the petitioners and the precise demurrers which were filed. The plaintiffs in the equitable petition are M. M. Bowden, J. B. Huff, the Merchants & Mechanics Bank, and the Muscogee Bank, each claiming that the decedent, L. F. Humber, is indebted to them in named amounts. The petition further alleges as follows: All three of the executors of the testator are residents of Georgia, and each and all of the petitioners presented their claims to the defendants as executors in Georgia, in writing, within the time prescribed by law, and "fully complied with the laws and statutes of Georgia in the presentation of his claims against said estate to said defendants as executors." The executors, since their qualification as such in Georgia, have collected and received from property and assets of the testator which were in the State of Georgia, and which they took possession of as executors appointed and qualified in the ancillary probate of the will of testator in the court of ordinary of Muscogee County, Georgia, a large sum in cash, and they now have said cash in possession, and other assets of the testator not yet collected or converted into cash, and they now hold $25,880.23 in cash arising from property of the testator located in the State of Georgia, and said sum is ample to pay petitioners and all other Georgia creditors holding debts of equal dignity and priority with the debts of the petitioners. As Alabama executors they have filed a suit in chancery in the circuit court of Russell County, Alabama, removing their administration from the probate court into the chancery court, and have declared the estate insolvent, praying an administration under the laws of Alabama in such cases provided. They have not listed plaintiff's claims as required in insolvency applications; and though they admit knowledge of said claims, they insist that the same are barred by the provisions of the law of Alabama. By filing their suit in Alabama, and seeking to have an insolvency decreed and an administrator elected by those creditors whose names and claims they have reported, they will have their letters of executorship revoked and the assets vested in the administrator so chosen, and they will be discharged of their trust. There is danger of loss or other injury to petitioners' interest, and of a probable re-

moval of the cash in the hands of the executors in Georgia into Alabama and beyond the jurisdiction of the courts of Georgia. The superior court of Muscogee County, as a court of equity, should compel such foreign executors to protect petitioners' interest according to equity and good conscience, before removing such assets beyond the limits of the State. For this reason, and to avoid a multiplicity of suits, the petitioners pray for an accounting, and a decree in favor of each of them for such sum as may be found to be due against the estate of L. F. Humber; that the estate in Georgia be administered by the court; for a receiver; for an injunction restraining the defendants from removing any of the assets of the estate from Georgia; and for general relief.

On January 12, 1924, the judge by consent of parties granted a temporary restraining order. enjoining the defendants from removing from the State of Georgia any of the money, choses in action, or other assets of L. F. Humber until the further direction of the court. On February 16, 1924, the defendants filed a demurrer based upon four grounds. The attack made upon the petition in the first ground of the demurrer was met by amendment. The second ground avers that all of the claims are barred and unenforceable, "because they were not proved and filed as required by the laws of Alabama, as required by sections 2590, 2593 of the Code of Alabama of 1907, and because they were not presented in twelve months after the grant of administration in Alabama as required by said code section." The third ground presents in substance the same question as that embodied in the second; and the fourth ground sets forth that the petition should be dismissed "because the petition shows that proceedings have been filed in Alabama to declare the estate insolvent—that is the estate of the said deceased Humber—and that such proceedings, when the insolvency is so adjudicated, will have the effect of depriving the executors of said will of the administration of said estate both in the State of Alabama and in the State of Georgia." The trial judge overruled the demurrers, and the exception is to that judgment.

1. There are two questions presented by the record. (1) Has the superior court of Muscogee county jurisdiction to administer the estate which the testator left in Georgia? (2) Are the claims of the petitioners barred? The question of jurisdiction

is paramount in the determination of whether the claims of the petitioners are barred, because the allegations of the petition show that under the laws of Georgia no statute bars the enforcement of their demands, though it is practically admitted in the petition that under the Code of Alabama, and in the proceedings filed in Alabama by the defendants, their claims against the estate of the testator would be barred. In other words, the question as squarely presented is, has a court of equity in Georgia (which under our law has authority concurrently with that of the court of ordinary as to the administration of estates) jurisdiction to protect the interests of creditors who are citizens of Georgia in the collection of debts due them by a non-resident, when there are in this State assets belonging to the estate of the deceased non-resident, amply sufficient to discharge their demands? It is insisted by the learned counsel for the plaintiffs in error that in the case at bar there is no statute requiring that the assets be distributed according to the laws of Georgia, and no statutory requirement that after this distribution the balance be turned over by the representatives here to the representatives in Alabama; that the estate should be distributed in accordance with the laws of Alabama, which was the domicile of the testator; and that under the laws of Alabama the claims of the defendants in error are barred by reason of noncompliance with the requirements imposed by Alabama law. Numerous authorities are cited in support of these contentions. Among them are *Laline* v. *Clements, 3 Ga.* 426 *, Sanford* v. *Thompson,* 18 *Ga.* 554, and *McNamara* v. *McNamara, 62 Ga.* 200, as well as 24 C. J. 1128, 1141, §§ 2701i, 2731b. We think the Georgia cases cited can be easily distinguished from the case at bar, and we are of the opinion that the great weight of authority should incline us to a view contrary to that entertained by counsel.

Conceding that the executors are mere ancillary executors, and that they qualified as executors merely upon proof of their executorship in Alabama, as provided by our code, for the mere purpose of collecting debts due the testator, and conceding, but not at this time deciding, that any distribution of the estate as far as the interest of heirs or legatees is concerned should be governed by the laws of Alabama, because that State was the domicile of the testator, nevertheless the question here presented con-

cerns only creditors of the testator. Under our law, so far as we are aware, in the distribution of the estate of a deceased person the rights of creditors are superior to those of heirs or legatees. Debts must be first paid before it can be determined whether either heirs or legatees are to receive anything; and in advance of the payment of debts it can not always be said that there is any property subject to inheritance or devise. Since a debt due by an estate is a charge upon the estate—an obligation to which the estate is subject,—the term "distribution" is perhaps inaptly applied when used with reference to payment of debts of a testator, and should with exact propriety be applied only to a division of the residuum remaining only for heirs or legatees after the debts of the testator have been paid. Viewing the matter in this light, we are of the opinion, even after considering authorities from other jurisdictions cited by learned counsel for plaintiffs in error, that the lower court did not err in overruling the demurrers. The executors named in the will qualified as executors in Alabama; but the estate of the testator embraced large properties in the State of Georgia, including choses in action and other demands which had to be collected or reduced to cash. Accordingly these executors, all of whom are residents of Georgia, qualified as executors in Georgia in the manner prescribed by Georgia law. So far as appears from the record, no right of heirs or legatees is concerned in this case, because the executors allege that the estate is insolvent. Therefore there can be no distribution to heirs or legatees if there be other property of the testator not embraced in the will. Under such facts, we do not think that in any instance Georgia creditors should be forced to go into a foreign jurisdiction to collect their demands against the estate of the testator, when the State of Georgia has within its jurisdiction the res which may be subjected to the payment of these debts.

In the case of *Latine* v. *Clements*, 3 *Ga.* 426, the point here involved was not before the court. Only one question relating to a foreign will was considered, and it was held that "An action will lie against an administrator with the will annexed, in Georgia, on a judgment obtained in Virginia against an executor." The court properly based its decision upon articles 3 and 4 of the constitution of the United States, which require that "*full*

*faith and credit* shall be given in each State to the public acts, records and *judicial proceedings* of every other State." As said by Judge Nisbet in delivering the opinion, "Congress has declared what the constitution means by *full faith and credit;* it has enacted that the judgments of State courts shall have the same faith and credit in other States, as they have in the State where they are rendered. Act of Congress of 26 May, 1790, ch. 11; 3 Story Com. on the Const., ch. 29, sec. 1297 to 1307. They are put upon the same footing with domestic judgments." A large portion of Judge Nisbet's decision is taken up with a discussion and definition of the term "privity," but that is unimportant in this case, since it may be admitted that there is a certain privity between the executors in Alabama and the executors in Georgia, in that they are the same individuals and represent the same testator, though the estate in Alabama and the estate in Georgia are different parts of the whole, because each may be subject to diverse regulations as to many matters which have been the subject of local adjudication. Aside from a matter of pleading dealt with in the first headnote of the *Latine* case, the only question before the court, as we have stated, was, that, giving full faith and credit to a judgment against an executor in Virginia, a Georgia administrator of the same estate was subject to an action upon that judgment, because of the privity between them, due to the fact that each and both of them represented the same testator whose will was the law as to the execution of the trust. But in the opinion in the *Latine* case Judge Nisbet remarked that "The administration in Georgia is necessary, because the Virginia executor has no power to act in Georgia; the two States are sovereign, and, as to each other, foreign." So in this case the administration in Georgia is necessary, because the Alabama executors had no power to act in Georgia. They qualified in this State as executors, in order to collect the assets of the estate—for distribution it is true,—but a distribution subject to the payment of debts.

Can equity out of assets in this State compel the payment of the debts of the testator, regardless of that comity of States by reason of which we concede to the laws of a sister State extraterritorial jurisdiction? In *Mitchell* v. *Cox,* 28 *Ga.* 32, this court held: "If H. dies in Arkansas and there is a creditor of the de-

ceased in Georgia, and assets belonging to the estate here, and the estate of H. be insolvent, the creditor in this State is entitled to receive his pro rata share of the entire fund in both States; and neither justice nor the courtesy of States requires that the surplus be transmitted by the ancillary administrator here to the principal administrator in Arkansas." In delivering the opinion of the court Judge Lumpkin said: "Whether Mitchell holds the note of Buffington, belonging to the estate of White E. Harden, or the proceeds which stand in the place of it, makes no difference. In the settlement of the note he was justifiable in allowing as a set-off, or part payment, the counter-claims held by Buffington against Harden. He could not have compelled payment of Buffington, except for the excess. But as to the surplus, if there be any, the courtesy between States does not, we apprehend, extend so far as to require this fund to be transmitted to the State of Arkansas, and force the creditor in this State to go there to collect his debt. On the contrary, we rather think that the fund should be impounded here until Cox can receive, at least, his pro rata share of the entire assets of the deceased, provided the estate is insolvent. If the estate be solvent, then there need be no controversy; but the whole amount of the money here should go to the creditor here. All that justice demands is, that when an estimate is made of the whole estate of Harden—if the part coming to the claim of Cox would be less than the fund in Georgia—in that event, for the overplus to be sent by the ancillary administrator here to the principal administrator in Arkansas. We are not prepared to say that even this is not going too far." From what has been said we think it clear that the court has jurisdiction to impound the assets in Georgia, which were admittedly the property of the testator, for the payment of the testator's debts to Georgia creditors. This carries with it the right on the part of the court to administer the Georgia assets, and, by rendering judgment in behalf of such creditors as are entitled thereto, appropriating such portions of the assets as will be sufficient to discharge these debts.

2. But it is said that under the law of Alabama the claims of all the plaintiffs are barred, and for this reason, regardless of anything else, the petition is demurrable and should be dismissed. If it be conceded that the laws of Alabama governing the distri-

bution of estates should govern in the distribution of the Georgia property owned by an Alabama testator, it does not, in our opinion, follow that statutes of limitations adopted in Alabama should prevail over Georgia statutes upon the same subject. They are purely remedial; and it has been always held that the law of the forum determines the remedy and determines when a claim may be enforced in the courts of that State. *Thomas* v. *Clarkson,* 125 *Ga.* 72 (54 S. E. 77, 6 L. R. A. (N. S.) 658). "As to remedies, the law of the forum governs." *Latine* v. *Clements,* supra. "The policy of the State (Georgia) is to furnish her own people with a remedy to recover their rights in her own courts, without compelling them to go into a foreign jurisdiction to obtain their lawful and just claims." *Johnson* v. *Jackson,* 56 *Ga.* 326, 328 (21 Am. R. 285). The creditors in this case allege that the Alabama executors have disallowed their claims, but in our opinion this is no bar to the allowance of the claims as a basis for suit in Georgia. In the case of Wilson v. Hartford Fire Ins. Co., 164 Fed. 817 (90 C. C. A. 593, 19 L. R. A. (N. S.) 553), in the Circuit Court of Appeals of the Eighth Circuit, in which Judges Sanborn and Van Devanter, now Justice of the Supreme Court of the United States, presided, Judge Sanborn, delivering the opinion of the Court, said: "Administration in the State of the domicile of the decedent does not govern the administration of the property of a decedent in any other State." The court also held, upon the point with which we are now dealing, that "A claim against the estate of a decedent in the hands of an administrator with the will annexed in one State is not barred because it was not presented and has become barred against the estate of the decedent in the hands of the domiciliary executors of the same will in another State." We deem this ruling directly in point as to the question as to the bar of the statutes of limitations. In this decision numerous authorities are cited. Some of them are contrary to the ruling made by the court; but the court, in a well-considered opinion, after a comparison of the conflicting opinions and upon ample authority, ruled that a bar interposed by the law of the State of a foreign testator was ineffective to prevent the application of the remedial rule which is enforced in the jurisdiction where a suit may be pending against the lawful representative of an estate. As said by Judge San-

born: "The property of the estate which is situated in Kansas is not controlled nor is its administration or distribution governed by the laws of the domicile of the testator. The laws of Illinois have no extraterritorial force, and they are powerless in the State of Kansas. The property of the estate of the testator in that State is subject to and it must be administered and distributed in accordance with the laws of the State of its situs. Under the statutes of Kansas the property of deceased persons in that State, whether they were residents or non-residents, is subject to the payment of their debts due to citizens of other States to the same extent as it is to the payment of those owing to its own citizens. . . The effect of this legislation is that the application of the Kansas property of a deceased non-resident of that State, whether testate or intestate, to the payment of his debts, is governed exclusively by the laws of Kansas, and the laws of his domicile can have no effect upon any part of that property until those debts have been ascertained and paid."

So we conclude that the law of Alabama, which would bar the claims of the petitioners, has no extraterritorial potency. The law of Georgia as to this prevails; and the trial judge correctly held that the claims of the petitioners as set forth in their petition were not barred.

*Judgment affirmed. All the Justices concur.*