## Laughlin M'Donald, Appellant, *versus* Jotham Morton & Al.

On an appeal from a decree of the judge of probate against the application of one who had been put under guardianship as *non compos,* to have the letters of guardianship revoked, the appellant need not give bonds to prosecute the appeal.

On the 17th of March, 1804, the overseers of the poor of the town in which the appellant lived, made a representation to the iudge of probate that the appellant was incapable of taking care of himself, he being *non compos.* (*a*)   Thereupon the judge directed the selectmen "to make inquisition thereinto."   And the selectmen having adjudged him to be incapable of taking care of himself, and having certified the same to the judge, he, on the 4th of April, 1804, appointed the appellees the guardians of the appellant. Since that time the appellant made application to the judge to have the letters of guardianship set aside and his estate returned * to him, because, as he alleged in his application,   [ * 544 ] he was restored to the use of his reason.   The judge decreed that the application be dismissed ; from which decree the appellant appealed, and filed as the reason of the appeal that he is *compos mentis.* (*b*)

For the appellees it was said that the statute had not authorized the judge of probate to remove guardians by him appointed ; and therefore that his decree could not have been other than it was. But however that may be, this Court ought not to sustain the appeal, because bonds have not been given as required by the act of March 12th, 1784, (*stat.* 1783, *c.* 46.)   By the 4th *sect.* of that act, it is provided that bonds shall be given and filed in the probate office by the appellant from any decree, &c. of the judge of probate, for the prosecution thereof to effect, and for paying costs, &c.   No bonds have been given in this case ; the Court therefore cannot sustain the appeal.   The words of the statute are general, and make no exception.

For the appellant it was insisted that although there is no provision in the statute as to the power of removal, yet it was necessarily incident ; that the cause ceasing, the appointment ought to be vacated.   And it would be, not only absurd, but unjust in the extreme, that where an appointment of this kind had been made,

(*a*) Act of March 10, 1784, *sect.* 3. (*stat.* 1783, *c.* 38, § 2.)
(*b*) Act of March 12, 1784, *sect.* 4. (*stat.* 1783, *c.* 46.)

an appointment, as the case may be, for a mere temporary inability, that the authority of the guardian should continue forever. As to the bond ; while the appellant was under guardianship his bond would be void ; it would therefore have been idle and nugatory to have given it, which was the reason why he did not give any. The appellees have, by their appointment as guardians, the custody and care of both the person and property of the appellant if [ * 545 ] they prevail in this case, they will continue to hold * his property, and can indemnify themselves ; if the appellant succeed, the bond, had one been given, would, of course, be at an end. The statute, therefore, was never intended to extend to a case like the present.

In reply it was said, that giving bonds was at least an essential form, and expressly required by the statute. And although, in this particular case, the necessity or use of giving bond could not be discerned by the Court, yet the statute having required bonds to be given in all cases, the presumption is that it is useful ; and the Court will not undertake to make an exception, when none is made by the legislature. A minor must procure some person to give bonds for him, and so might the appellant have done in this case. But if the allegation of the appellant, *in his petition*, be true, his own bond would have been good ; for he *there* says that he is now *compos mentis ;* and in either case there is no reason why bonds should not have been given. There is another objection, as to the form of proceedings  Can the appellant be a proper person to bring forward this suit ? It is conceived that while he was under guardianship, his capacity of acting was so taken away that he could not prosecute in person, but that he ought to have appeared by his next friend.

THACHER, J. I am in favor of sustaining the appeal and going into the inquiry prayed for by the appellant. From the nature of the case it seems to me that he is entitled to prosecute in the manner he has. It would have been useless for him to give bonds. The effect of the appointment of guardians was to take away from the appellant the capacity of acting, *civiliter ;* and his bond would have been void. All his property is in the hands of the guardians, and therefore his bond could be of no use.

[ * 546 ]   * SEWALL, J. As at present advised, I am for sus· taining the appeal, (notwithstanding no bonds have been given,) and going into the inquiry. The appointment of the guardians being for a temporary purpose, has, perhaps, if the allegations of the appellant be true, become void of course. But it may be of service to set it aside in form, to prevent disputes, in future, as to the restoration of the appellant to his capacity of acting and contracting for himself.

SEDGWICK, J. There seems to be two questions ; *First,* whether the appellant is a proper person to bring forward a suit to repeal the letters of guardianship ; and, *Secondly,* whether bonds ought not to have been given.

As to the *first,* I am of opinion that he is competent. The law contemplates that there may be a time when a person, in the situation of the appellant, may be restored to his property ; that is, when he is restored to his reason. I do not think he is to be left to friends. Their ignorance of the fact, carelessness, or inattention, ought not to leave him in bondage forever. The statute, a law made for the most humane purposes, could not intend it. As to the *second* question. The appellant has been adjudged of such mental debility as to be incapable of contracting and taking care of himself, and he has had guardians, for that reason, appointed. That decree is now in force, and he is the ward of these guardians. How, then, has he the capacity of making these bonds, without which, it is said, his wardship shall be perpetual, however perfectly his mind may have become restored ? But how are such bonds necessary ? They are to satisfy the costs to which the appellees will be entitled in consequence of the final rejection of his petition by a decision against him. Now, the letters of guardianship will either be repealed, and in that case the appellees entitled to no costs, and the bond, of * course, wholly unnecessary ; or the guar- [ * 547 ] dianship will be confirmed by the dismissal of the petition, and *that* because the appellant is proved to be *non compos mentis ;* and in such circumstances his contracts in general, and, of course, such bond would be void. To this it may be added that the whole estate of the appellant is in the hands of the appellees, and they will, if their guardianship continue, be able to pay themselves. For these considerations I am of opinion this is not a case within the statute. It is really a very strange objection to be made by the appellees. They, while the decree of the judge of probate remains in force, have the sole power of contracting in the behalf of the appellant, yet refuse to answer to his petition until he has given a bond. What is this but saying, that however the appellant may be relieved of that most calamitous visitation of Providence for which he was put under guardianship, yet that the guardianship shall be perpetual ? In the other view the objection is absurd, as it calls upon a man to make a solemn contract by deed, while those who demand it declare him wholly incapable, from mental debility, of making *any* contract. The Court therefore will go into the inquiry.

From the testimony of the witnesses, who were called to testify in the case, it appeared perfectly clear that the appellant was in the

full possession of his reason, and, considering his age, uncommonly capable of taking care of himself and his property.

The Court (*Sedgwick, Sewall,* and *Thacher,* justices) were clearly and unanimously of opinion that the decree of the judge of probate must be reversed. And by,

SEDGWICK, J. I believe the difficulty in this case has arisen from confounding two distinct and independent provisions of the act of March 10, 1784, (*stat.* 1783, *c.* 38.) empowering judges [ * 548 ] of probate to appoint * guardians; *that* of the 3d *sect.* authorizing the appointment of guardians to idiots, *non compos* and lunatic persons; and *that* of the 8th *sect.* which regards the idle and dissolute. By the latter *sect.,* judges of probate are authorized, upon complaint and *due notice* thereof, to appoint guardians to "any person who, by excessive drinking, gaming, idleness, or debauchery of any kind, shall so spend, waste, or lessen his or her estate, as thereby to expose himself, or herself, or his or her family, or any of them, to want or suffering circumstances, or shall, by thus spending, wasting, or lessening his or her estate," expose he town to a charge for maintenance. From the evidence produced on the part of the appellees, there is at least some reason to believe that the appellant might have been brought within *this sect.* of the act, if the proceedings had been upon it; but all this is out of the question; the appellant has not been charged with *drinking, gaming, idleness or debauchery* of any kind. He had no *notice* to attend before the judge, as must have been the case if the prosecution had been on *this sect.* of the act. We must therefore lay aside all evidence which might have been applied in such a case, and attend to the record before us, and the evidence which has been given as to the reason and capacity of the appellant. From this evidence it is clearly, and beyond all doubt, established, that the appellant has the capacity of taking care of himself and his property. The decree of the judge of probate must therefore be reversed.

Decree reversed, and the letters of guardianship revoked

*Wilde* and *Crosby* for the appellant.

*Parker* and *P. Mellen* for the appellees.