No. 80.—DANIEL SANFORD, administrator, &c. plaintiff in error, *vs.* JAMES THOMPSON AND WIFE *et al.* defendants in error.

[1.] When an estate, in the hands of an administrator, to be administered, is so situated as to force upon the administrator the question, whether it is to be administered by the law of this State, or by the law of another State, the administrator may ask a Court of Equity to settle that question for him.

[2.] The laws of one State have force in the territory of another, as long as they do not come in conflict with the power or right of that State, or of any of its citizens.

[3.] If assets are to be administered according to the law of another State, and if all the claimants on these assets reside in that State, it is proper that they should be transmitted to the administrator appointed in that State, to be by him administered.

In Equity, in Monroe Superior Court. Demurrer. Decided by Judge STARK, March Term, 1855.

David S. Walker, a citizen and resident of Alabama, departed this life insolvent. He owed no debts in Georgia at the time of his death, nor had he ever resided here so that suits might have been brought against him. He was largely indebted in Alabama, in judgments recovered against him there, which were, at the time of his death, good and subsist-

ing judgments against him, unaffected by the Statute of Limitations; and that they are now good and valid there against his estate—not affected by the Statute in that State, but barred here. His creditors are all citizens of Alabama. Before his death, John T. Dunn, of Monroe County, Georgia, of whom the said David S. Walker was one of the heirs at law, departed this life; and the said David S. having died before he collected any part of the distributive share to which he was entitled, the plaintiff in error administered on his estate, and has collected the greater part of it from Dunn's administrator. The judgment creditors of Walker, in Alabama, have sued Walker's administrator in Monroe County, and with the *consent* of plaintiff in error, but not by his request; the Attorney of the heir at law of Walker, has filed the plea of the Statute of Limitations, in bar of the recovery of the judgments, and insists that he shall make that defence. The Alabama judgments, with the interests which have accrued thereon, exceed the amount of the assets in the hands of the plaintiff in error. James Thompson and his wife, Martha Jane, the latter of whom is charged to be the only heir at law of David S. Walker, have instituted a suit in Chancery to recover the whole of the assets of his estate, to the exclusion of his creditors, which suit is still pending. There are no effects of Walker, in Alabama, from which the judgments against him can be paid. There is an administration of the estate of Walker in the State of Alabama. The judgment creditors of Walker, in Alabama, insist that the assets of his estate shall be transmitted to Alabama, to be there distributed according to the law of decedent's domicil; or if distributed here, that they shall be distributed according to that law. The plaintiff in error, as administrator of Walker, filed his bill in Chancery, in the which the foregoing facts appear, and prayed the direction of the Court as to his duty. The defendants, Thompson and his wife, heirs at law of David S. Walker, demur to the bill on several grounds, to wit:

1st. The want of equity.

2d. That complainant is not entitled to the relief sought

and the decree prayed for, because it does not appear that there has been any administration on the estate of David S. Walker, in the State of Alabama.

3d. That the Court of Chancery of Monroe County, according to the case made, has no jurisdiction of the effects in his hands, for the purpose of transmitting them to the State of Alabama for administration there, at his instance, as administrator; and will exercise jurisdiction, for the purpose aforesaid, only at the instance and upon the application of some person legally entitled to receive them.

4th. That the Court has no jurisdiction for the purpose aforesaid, of the effects aforesaid, because there are no debts in said bill charged to be due and owing by said Walker, except those set forth in complainant's bill, and they are barred by the Statute of Limitations of the State of Georgia, and are thereby extinguished.

5th. That from the charges and allegations in the bill, all persons who are interested in the estate of the deceased, in the State of Alabama, either as creditors or distributees, are asserting their rights, by legal process, under the laws of Georgia, and have thereby elected to have the same adjudicated by the Courts and under the laws of said State; and, therefore, this Court will not grant the relief and award the decree asked.

6th. That complainant, in his said bill of complaint, charges and alleges, that debts are due and owing by the estate of said Walker, in the State of Alabama—are payable by the laws of said State; and on that account, and no other, asks a decree, that the effects in complainant's hands shall be transmitted to said State, and the said defendants, for demurrer, show that debts due by a person domiciled in a foreign State, or a claim upon effects within the jurisdiction of this Court, are payable under and according to the laws of Georgia, and not otherwise.

Argument being had upon the demurrer, the Court sustained the demurrer, and ordered the bill to be dismissed, and Counsel for complainant excepted.

CABINESS, for plaintiff in error.

HARMAN, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

The prayer of the bill in this case is, that the complainant, the administrator of David S. Walker, may be instructed "in his duty in administering the estate of the said David S. Walker, in all the matters" stated in the bill.

Those matters are, that the said Walker died a resident of Alabama; that he left unsatisfied several judgments which had been rendered against him by Courts of Alabama; that the plaintiffs in those judgments, who were also resident of Alabama, had sued the complainant as the administrator of Walker on the judgments; that the judgments were barred by the Statute of Limitations of Georgia, but not by the Statute of Limitations of Alabama; that one Thompson and his wife, who was the only child of Walker, had, as his next of kin, also sued the complainant as Walker's administrator, for the assets; that they were also residents of Alabama; that besides them, the creditors aforesaid, there were no other persons interested in the assets; that the administrator did not know whether the assets ought to be administered by the law of Georgia or by the law of Alabama; nor whether, if it were so that they were to be administered by the law of Alabama, they were to be so administered by him in Georgia, or were to be turned over to the administrator in Alabama, to be so administered by him in Alabama. The bill stated that there was an administrator in Alabama.

Now is this the statement of such a case as authorized the complainant to make to the Court the prayer aforesaid, viz: that he might be told by the Court how to administer the assets in the particular in respect to which, according to the statement, he did not know how they should be administered? In *Comyn's Digest, (Chancery,* 3 *G.* 6,)* it is said, "that

the most safe way for payment of legacies by an executor, is to take the direction of the Court of Chancery."

And in *Story's Equity*, (§544,) it is laid down, that "however correct these reasons may be for a refusal to interfere in ordinary cases, involving no difficulty, they are not sufficient to show that the Court ought not to interfere in behalf of an executor or administrator, under special circumstances, where injustice to himself or injury to the estate may otherwise arise."

And this position is certainly covered by *Buccle vs. Atles,* (2 *Vernon,* 37.)

The circumstances of this case are such, that the administrator himself, if not the estate, would stand a good chance to suffer improperly, should the administrator not obtain from the Court the instruction for which he prays. The question which troubles him, is one well calculated to trouble him. It belongs to a class of questions which are amongst the most difficult of any in the law—a class which, perhaps, may be comprehended under this general question: in what cases are the laws of one State operative in another State? Who can answer this question? Who can lay down a rule by which it may be answered? It is a question which the wise and the learned have grappled with in vain. It is not wonderful, therefore, that the question presented to this administrator by his case, was one which he did not know how to answer, for it belonged to this class.

For the present, then, I simply say that the question which this case forced upon the administrator, was a question of real difficulty. It was such a one, therefore, as he might easily decide wrong. And if he should have decided it wrong, the consequence would have been loss—improper loss to him personally, or perhaps to those entitled to the assets.

And according to what may be inferred from the passage in *Comyn's Digest,* and that in *Story's Equity Jurisprudence,* and from the decision in *Vernon's Reports,* a case involving a question of this kind, is a proper case to be presented to a

Court of Equity by an administrator, that it may solve the question for him.

Indeed, the reason of the rules on which the right of *interpleader* rests, if not the rules themselves, extends to a case like this. (*Story's Eq.* §800, *et seq.*)

[1.] Doubtless there is great danger of abuse of the right to bring such bills as the present, but we cannot say that we think the present bill is brought in the abuse of that right. On the contrary, we consider this bill to make out a case which entitles the complainant to the instruction for which he asks.

If we are right in this, the bill ought not to have been dismissed on the demurrer. And when we say this, we say all, perhaps, that in strictness of propriety ought to be said; for the only proper question on the demurrer was, whether or not the case made by the bill was a case which entitled the complainant to the instruction which he prayed for.

But other questions were made on the demurrer, and they were the main questions which were argued in this Court; therefore, this Court will express an opinion on them. These questions relate to what ought to be the instructions which should be given to the administrator, in the event that any ought to be given to him—questions manifestly more appropriate to a later stage of the case.

Of these questions, the chief one was, whether the assets were to be administered according to the law of Alabama or according to the law of Georgia? The domicil of the intestate and of *all* the claimants upon the assets, was, it will be remembered, in Alabama. No citizen or resident of Georgia had any right or interest involved in the case.

Such, then, being the case, was it one in which the assets were to be administered by the law of Alabama, or by the law of Georgia?

It is laid down by *Huberus*, in the third of his "axioms," that the rulers of empires, from comity, so manage things that the laws of every people in use, within its own limits, shall preserve, every where else, their force, as long as they

work no prejudice to the power or right of any other ruler and his citizens. His words are, "*Rectores imperiorum,. id, comiter agunt, ut jura cujusque populi intra terminos ejus exercita teneant ubique suam vim, quatenus nihil potestati aut juri alterius imperartis ejusque civium, praejudicetur.*" (*Story's conflict of laws,* §27, note 3.)

According to the English decisions, this axiom does not allow to international comity sufficient breadth; at least, not to that comity which relates to the law of administrations.

In *Bruce vs. Bruce,* in the House of Lords, Lord *Thurlow* said: "But to say that the *lex loci rei sitae* is to govern, though the *domicilium* of the deceased be, without contradiction, in a different country, is a gross misapplication of the rules of Civil Law and *jus gentium,*" &c.   (2 *Bos. & Pul.* 231, *note a.*)

In *Bempde vs. Johnstone,* Lord *Rosslyn* said : "and if the argument had raised a doubt in my mind, and I were not inclined to follow the rule that has prevailed in other cases, I am bound, by repeated decisions in the House of Lords, to make the decree I intend to make—that the Marquis had that domicil in *England,* that decides upon his succession to his personal property, and carries the distribution according to the laws of England.   The point has been established in the cases in the House of Lords which, if it was quite new and open, always appeared to me to be susceptible of a great deal of argument : whether, in the case of a person dying intestate,. having property in different places and subject to different laws, the law of each place should not obtain in the distribution of the property situated therein.   Many foreign lawyers have held that proposition.   There was a time when the Courts of *Scotland* certainly held so.   The judgments in the House of Lords have taken a contrary course: that there can be but one law; they must fix the place of the domicil; and the law of that country where the domicil is, decides whereever the property is situated.   That I take to be fixed law now."   (3 *Ves.* 200.)

Upon the strength of these and other English decisions and.

DECATUR, AUGUST TERM, 1855.          561

Sanford, adm'r, &c. vs. Thompson and Wife et al.

other authorities, Judge *Story*, in *Harvey vs. Richards*, (1 *Mass.* 407,) felt himself authorized to say : " In the first place, the distribution, whether made here or abroad, must be according to the law of the place of the testator's domicil. This, although once a question vexed with much ingenuity and learning in Courts of Law, is now so completely settled by a series of well considered decisions, that it cannot be brought into judicial doubt."

[2.] These decisions all give a breadth to comity in respect to the law of administrations and successions, far beyond that given to it by the axiom of *Huberus*. By that axiom, comity makes the foreign law operative only as long as it does not *prejudice any power or right of the domestic sovereign and his citizens*. We think, therefore, that that axiom may be safely followed. Indeed, it is, from its own nature and terms, a thing which can never so operate as to do either domestic, sovereign or citizen any *harm*.

But as to whether the decisions aforesaid, as interpreted in the language quoted from them, may be safely followed to the whole extent to which they go, we express no opinion. Speaking for myself, I must say that I doubt it strongly.

Considering, then, this axiom as true ; that is, considering it to be really an axiom, the question is, whether this State or any of its citizens, would be prejudiced if the assets in the hands of Walker's administrator, should be administered according to the laws of Alabama? And the answer is, that neither this State nor any of its citizens *could* be prejudiced by an administration of the assets according to those laws; for neither this State nor any of its citizens, has any claim upon those assets the sole claimants upon them being citizens of Alabama.

It follows, that the assets ought to be administered according to the laws of Alabama.

[3.] If, then, the assets are to be administered according to the laws of Alabama, who is the person so to administer them—the administrator in Alabama or the administrator in Georgia ? This we regard as a question of mere expediency ;

a question as to the solution of the best means to accomplish an end. And in this case, it seems to us plain, that the best means to accomplish the end, would be an administration of the assets in Alabama or by the Alabama administrator. Is it not certain that, if so administered, the chances are greatest that they will be administered according to Alabama law? And that is the end to be attained.

It is far less likely that Alabama citizens and Alabama Courts, will make a mistake as to what is Alabama law, than it is that Georgia citizens and Georgia Courts will make such a mistake.

One of the grounds of the demurrer was, that an order that the assets should be transmitted to the administrator appointed in Alabama, would be made only at the instance of "some person legally entitled to receive them."

Of course, if no person legally entitled, by the law of Alabama, to receive these assets, applies for them to the administrator appointed in Georgia, the latter must, himself, administer them; and in doing that, he will have to proceed, as best he can, by the law of Alabama.

Another of the grounds of demurrer was, that the judgments, on which were founded the suits by Walker's creditors, were barred by the Statute of Limitations of this State.

Admit this to be so; yet, of what concern is it, if the assets are not to be administered by the law of Georgia, but by the law of Alabama?

As to whether this, however, is really so or not, I desire to say, that what I individually think, is to be found in what I said in *Bishop vs. Sanford*, (15 *Ga. R.* 1.)

Another, and the only remaining ground of demurrer was, that the creditors and next of kin, had *elected* to sue the administrator appointed in Georgia. But are such suits evidence that the suitors prefer an administration of the assets in Georgia, to an administration of them in Alabama? What else could the suitors do, as long as the assets remained in the hands of the Georgia administrator, but sue him? How could *they*, creditors and next of kin, as they were, get the

assets out of his hands into the hands of any one in Alabama?

But suppose that *they* did prefer an administration which should be in Georgia, is that decisive of the question ?  Even in that case, ought not the assets to be administered where they will be best administered ?   Ought they not to be administered by that administrator who will be likely to make the fewest mistakes in their administration ?   Are considerations that concern the administrator's safety to have no weight ?

This, we think, is not a sufficient reason why the administration should be carried through in Georgia, rather than in Alabama.