McNamara *et al. vs.* McNamara *et al.*

[This case was argued at the last term and the decision reserved.]

1. Where the intestate died in New York, and administration was had there on his estate, and promissory notes on parties in Georgia in his possession were inventoried and appraised in New York, and the administratrix brought the notes to Georgia and settled them without suit, and was charged with them in an accounting before the surrogate court of New York, such court had jurisdiction to admin-

ister the notes according to New York law; and the record of the New York court is admissible in a suit between the distributees of the estate and defendants in Georgia, whose property the said distributees were seeking to condemn by tracing the funds of the estate into said property.

2. The charge of the court to the effect that the recitals of pleadings in a pending suit are notice to all the world in respect to parties therein directly concerned, but only notice to parties thereto so far as collateral persons were alluded to therein, cannot be complained of—certainly when there was no record evidence of such pleadings—the same having been lost—and when the parol evidence in relation to the contents of said pleadings was vague, confused and uncertain.

3. Whilst notice to the agent is notice to the principal, proof of the agency is indispensable; and the fact that one as father or friend merely gives information or advice in reference to a land trade, does not make such friend the agent in the sense of the above rule.

4. A judgment of the surrogate court of New York, where the notes of the intestate were administered, on a regular accounting before that court, and which shows that these complainants recovered each his interest in the Georgia notes from the administratrix, and which shows, moreover, that the administratrix was by the same judgment allowed to retain in her hands several thousand dollars of the assets of the estate as her share thereof, and where the records of said surrogate court also show that she gave bond and security for the administration of the estate—these Georgia notes being included in the inventory, and therefore covered by the bond—will preclude the distributees of the estate from pursuing the land of third persons in Georgia, unless said judgment shall be unproductive by reason of the insolvency of the administratrix and her sureties. The distributees will be held to have elected to go upon the administratrix and her sureties by such judgment of the surrogate court, and must exhaust that remedy there, before trying another here.

5. Innocent purchasers for value, without notice of an equity, will not be disturbed by a court of equity; and the preponderance of the evidence in this case shows that the defendants were such purchasers. Therefore, without regard to the principles ruled in respect to the judgment of the surrogate court of New York, the verdict is right in law and fact, and should not be disturbed.

Administrators and executors. Notice. Courts. Jurisdiction. Principal and agent. Equity. Before Judge HILLYER. Fulton Superior Court. March Term, 1878.

It is only necessary to add to the report contained in the

opinion the following: The sixth ground of motion for new trial (mentioned in the fifth division) was that the verdict was contrary to the charge of the court. The eighth ground was that the court erred in charging that "where a part only of the record is before the court, and the judgment does not mention the parties by name as having been served, but only describes them as a class, then evidence outside of the record, if any, may be looked to, along with the record itself, to ascertain whether any of the alleged parties were really so."

BOYNTON & DISMUKE; HENRY C. PEEPLES, for plaintiffs in error, cited as follows: The surrogate court had no jurisdiction of an accounting for the Lynch notes, Code, §§2502, 2614, 2615, 2616, 2617, 2618; acts of 1878, pamph., p. 16; 5 *Ga.*, 295–6; 24 *Ib.*, 370; 55 *Ib.*, 253; 1 John. Chan. R., 153; Perre W'ms. R., vol. 3, p. 369; 14 Abb., 461; 6 Hill, N. Y., 554; W'ms. on Ex'rs., 499, note (o[1]); Story on Confl. of Laws, §§512–15[a]. Notes are assets where debtor resides, 6 Hill, N. Y., 554; W'ms. on Ex'rs., p. 1761, note (g[2]); 10 Ohio St., 136; 2 Conn., 533; 1 Bradf. Sur. (N. Y.), 241; 3 Tenn., 55; 1 Allen, 132; 13 Ala., 329. Administratrix in New York has no interest in debt due here, W'ms. on Ex'rs. 499, note (o[1]); 1 N. H., 193; 7 *Ib.*, 503; nor authority to collect them, 6 Hill, 555; 7 Dana (Ky.), 206; 34 Me., 443; 4 Metcalf, 255; 5 Pick., 75; 11 Mass., 256; 6 John. Chan., 353. No settlement or judgment shown binding on complainants, 12 *Ga.*, 424; 1 Gr. on Ev., §577; Code, §§2333, 3152; Story's Eq. Jur., §1097. Charge as to *lis pendens* error: 44 *Ga.*, 28; 46 *Ib.*, 308; 47 *Ib.*, 24; 48 *Ib.*, 44: 51 *Ib.*, 250; 52 *Ib.*, 632; 56 *Ib.*, 630; 58 *Ib.*, 536. Charge as to agency error, 16 *Ga.*, 38; 18 *Ib.*, 697; 30 *Ib.*, 241; 38 *Ib.*, 252; 48 *Ib.*, 16. Sureties on administration bond liable only for money received by their principal in the discharge of official duty, W'ms. on Exrs., p. 599; 46 N. H., 110; 8 Grattan, 220; 11 Leigh, 309; 52 Me., 307; 2 Monr. (Ky.), 95; 2 How. (Del.), 15; 1 McMullan (S. C.), 249. If

the assets do not legally come into hands of administrator, not chargeable, 14 How. (U. S.), 400, 416; 2 Stockt. (N. J.), 269; 6 J. J. Marsh. (Ky.), 592; 1 Dana (Ky.), 345. Presumption as to foreign laws, 41 *Ga.*, 449; 43 *Ib.*, 461; 12 *Ib.*, 582; U. S. Dig., vol. 5, p. 500, §397, p. 501, §451. Suit without administration, 8 *Ga.*, 236.

WRIGHT & HILL, for defendants, cited (that innocent purchaser without notice protected), Code, §3092; 7 *Ga.*, 432,. 530; 37 *Ib.*, 392; 41 *Ib.*, 202.

JACKSON, Justice.

This was a bill filed by the complainants, who are the children of Mrs. Eliza McNamara, against her as their trustee, James M. Goldsmith, and John T. Meador, as trustee for his wife and children, to set aside a deed made by Mrs. McNamara to Goldsmith, and a bond for title from Goldsmith to Meador, and to recover the house and lot in Atlanta so conveyed by her to Goldsmith, and by him to Meador, and have the title thereto executed to them.

The facts are that John McNamara, the father of complainants, died in New York leaving a large estate, partly in New York and partly in Georgia and elsewhere; that the estate here consisted of nine promissory notes held by the intestate on one Patrick Lynch, of Atlanta, Georgia; that Eliza McNamara administered upon John McNamara's estate in New York, and came out to Georgia with the notes in her possession and took from Lynch the house and lot sued for in settlement thereof, and had the title made to herself thereto; that she afterwards sold the house and lot to Goldsmith for the sum of twenty-five hundred dollars; that Goldsmith afterwards sold the same to Meador in trust for his wife and children, giving Meador a bond for title when the purchase money was paid—time being given for payment thereof in installments; that Meador had paid some two or three thousand dollars thereon, leaving a balance of some twelve or fifteen hundred unpaid; that the

Lynch notes were inventoried with the other assets in New York; that the surrogate there passed upon the Georgia trade of the land for the Lynch notes, and held Eliza Mc-Namara responsible for the notes, with interest, amounting to some ten or eleven thousand dollars, on an accounting before him, and entered judgment in favor of these complainants against her for their respective shares of the estate, this fund included. It was in dispute whether Goldsmith had notice of the trust, that is, that the money of John Mc-Namara purchased the land, and that Mrs. Eliza McNamara was only the administratrix upon his estate, and that she could not, therefore, make a valid title to the land in dispute; but it is not doubted, so far as the record discloses the facts, that Meador was a purchaser without notice of any sort.

Under the charge of the court, the jury found a verdict for the defendants; and thereupon the complainants made a motion for a new trial, which was overruled, and the complainants bring the case here, assigning error in the superior court in overruling the motion for a new trial on all the grounds therein taken.

1. It is alleged as the first ground of the motion for a new trial, that the court erred in admitting in evidence the record from the surrogate's court of New York.

The objection is grounded upon the idea, first, that the surrogate court had no jurisdiction of the Lynch notes and their settlement in Georgia. Secondly, that the record does not show the actual payment by Mrs. McNamara of the proceeds of those notes to the complainants, nor that the Lynch notes were included in that accounting, nor that the complainants elected to hold Mrs. McNamara responsible for the money collected. And thirdly, because Bessie Winter, one of the complainants, was not a party to the judgment on the accounting.

It appears from this New York record that the Lynch notes were in the inventory and appraisement, and were accounted for, we think, with the other assets. Mrs. Mc-

Namara denied in her testimony that they were so accounted for, and the record was admissible to contradict and impeach her, if for no other reason. But Mrs. McNamara could have collected those notes out of Lynch in Georgia. She could have sued for them, and recovered upon them by filing her letters in court before judgment. Code, §2614. It was unnecessary for her to do so, because she settled with him without suit. Being promissory notes, they were probably payable to bearer, and Lynch would be protected in paying the notes to her. Any way, she might have showed her letters to Lynch. The law did not require her to leave a copy with him. These notes were the personal assets of John McNamara and were in his possession when he died, and were subject to distribution under the laws of New York, where he died. Even if administration had been taken out in Georgia to administer the assets here, the proceeds, when collected, would have been distributable according to New York law and by New York courts. 18 *Ga.*, 554.

It would therefore seem that when Mrs. McNamara came to Georgia, and first settled with Lynch by taking his house and lot, and then selling that and taking the proceeds off to New York and submitting the whole question to the surrogate court there—complainants being parties to the case—and was held liable on the notes, that the court there had jurisdiction to distribute the fund for which she was held liable on account of these notes. It is true that there is no proof that the judgment has been paid; nor is there any that it is not good. The sureties are responsible, and the presumption is that they are good. Besides, the administratrix herself was allowed some $9,000.00 by the judgment.

The judgment of the surrogate gave Bessie Winter her share of the estate on this accounting, which embraced these notes; therefore she must have been a party thereto.

There was no error, therefore, in admitting the record to go to the jury as evidence.

2. It seems that George McNamara was in Georgia, and a bill was filed against Mrs. McNamara under our Code to subject his share of the proceeds of these notes to the payment of some debt he owed. The papers were lost and there was no record evidence of this bill, and the parol testimony is quite confused about it. The court charged to the effect that the recitals in the bill in respect to all parties named therein would be constructive notice to all the world; but in respect to other people, merely collaterally named therein, the notice would not be effectual and binding; and as respects such collateral parties incidentally named in such a bill, Goldsmith would not have notice unless he was a party to the bill; then every recital would bind him. We think the charge fully as favorable to the complainants as they could ask, considering that there was no record of any such bill at all, and that the evidence thereof in parol was so weak and confused and uncertain.

3. The next ground is that the court erred in charging that notice to the agent is notice to the principal, "but notice to one who was merely acting as a friend, or relative and giving voluntary information or advice, would not make one an agent within this principle."

The proof was that the older Goldsmith was the father of the defendant, and both the father and son swore that the former was not the agent, but merely informed the latter of the opportunity to buy, and advised him to do so. We cannot see that the charge was improper under the facts of the case.

4. Complaint is made of the charge of the court substantially to this effect, that if these complainants had a judgment against Mrs. McNamara for their shares of these notes, then they must show a reversal of that judgment rendered by the surrogate in New York before they could proceed here against these defendants, or that they must show that judgment to have been unproductive by reason of the insolvency of Mrs. McNamara and her sureties on her administration bond in New York.

Suppose that she had administered in Georgia, and such a judgment had been rendered against her here, and it had been pleaded in bar of the pursuit by these complainants of this land, could they have recovered another judgment o r the same fund against purchasers of the land, if that judgment was outstanding and good? It would hardly be contended that equity would allow them to do so. They must elect between the two remedies, and having got judgment in one way against the fund, they could not harass third persons until they showed that the judgment against their trustee was unproductive for some reason, and would likely continue so. Now, whether or not these complainants have a valid judgment in New York turns upon the jurisdiction of that surrogate court over these notes; and we think as they were the personal effects of John McNamara, deceased, returned in New York by the administratrix in the inventory, marked doubtful in the appraisement, and treated there as assets for the due administration of which bond and security were given, that the court had jurisdiction, and the notes were distributable' by it according to New York law. See 18 *Ga.*, 554, before cited. The court made this point turn on the productiveness or unproductiveness of that judgment—the solvency or insolvency of the administratrix and her sureties—and whilst the question is a new one, and was argued with much learning and ability by the counsel for plaintiffs in error, we think that the court properly submitted the question to the jury; and that the court did not err as set out in the fourth and fifth grounds of the motion for a new trial.

5. The sixth and eighth grounds were properly overruled, because as to the sixth the verdict is not against the charge, and the eighth did not hurt complainants as the judgment from the New York court shows that all were parties in the view we take of it.

6. In respect to the other grounds, that the verdict is against law and evidence, we are of the opinion that there is evidence to sustain it, and that it is not against the law.

Leaving out the entire record from New York, and considering the case merely in the view that innocent purchasers without notice of an equity will be protected—Code, §3092 and decisions there cited—and the weight of evidence is with the defendants.   Even in case of accident and mistake, equity will not relieve against such purchasers.   Code, §3119.   And whilst the evidence is conflicting in respect to notice to Goldsmith with the preponderance, we think, in his favor, there is no conflict as to want of notice to Meador.   And whilst the latter has not yet acquired complete title from Goldsmith, he has paid largely upon his bargain for the land ; and complainants nowhere offer to do equity towards him—the bargainer for the land, if I may use the expression, and the real equitable owner thereof, with but a comparatively small fraction left unpaid.

In any view, we think that the verdict is right, and the case looks like an effort on the part of Mrs. McNamara and her children to play into each other's hands and recover property which she sold and got the price for, and for the price of which, and much more than its price, to-wit, the principal and interest of the Lynch notes, she has been adjudicated to be responsible to them in the surrogate court of the county in New York, where her husband died, and where she administered.

All natural equity is against their recovery ; and the principles of law and equity as found in the books do not require us to decide against what we consider the right and justice of the case.   The New York record shows several thousand dollars in her hands, allowed to be retained by her as her share of the estate.   Let her pay her children with that.

Judgment affirmed.