REFERREES, having settled their minds with regard to their report, sent for the Plaintiff, and asked him whether he would agree that a quarter's rent, which accrued after the action brought, should be taken into the settlement, and the Defendant credited for it, which would have made the ballance in favor of the latter. This the Plaintiff refused to comply with, and withdrew, without being asked another question, or saying any thing further upon the subject.

A motion was now made to set aside the report.

BY THE COURT. Referrees ought to proceed, not only so as to do justice, but to avoid the appearance of injustice; lest a precedent should be established, which might afterwards be perverted to a bad use. Misbehaviour is, therefore, a reason for the Court to interpose and set aside a report, no less than partiality and corruption. Referrees, however, are allowed greater latitude in their proceedings than juries. They are not equally bound to time and place, nor to the same strictness of method in receiving testimony. A reference would be of little service, if a report were liable to be set aside, for an irregularity so small as that mentioned by the Counsel, in the case of *Huron's Lessee* vs. *the Proprietaries,* for the South-street lots, that of merely handing in a paper to the Jury by mistake, which was only a copy of an original produced at the trial. Suppose, in the present instance, the Referrees had adjourned, and in the intermediate time, meeting *Innes* in the street, should make the proposal mentioned to him—surely this would not set aside the report. It is true, that the manner in which it was done, gave room for some suspicion, and the Defendant had a right to presume, that all was not fairly conducted. But the fact is satisfactorily explained by the Referrees, and we do not think it such misbehaviour as will invalidate the report. Therefore,

Let Judgment be entered for the Plaintiff.

## JAMES et al. *versus* ALLEN.

THE case was this:—The Plaintiffs and the Defendant had been concerned together in trade; and upon settling their accounts, a considerable ballance appeared against *Allen*; for the recovery of which an action was brought in the State of *New-Jersey* in *May* 1782; and judgment was therein obtained in *November* following, when a *Fi. fa.* issued, and on a return of *Nulla bona* to that writ, a *Ca. Sa.* was sued out returnable to *May* 1783 —In the mean time, the Defendant, on the 27th of *April* 1783, was arrested in *Pennsylvania* for the same debt, and gave bail; but, on his return to *New-Jersey*, he was there taken on the *Ca. Sa.* which

had

had iffued in that State againft him ; and, afterwards, in *October*, 1786.
1783, was difcharged by their Act of Infolvency. A rule to plead
had been entered in the action brought in *Pennfylvania* at *June* Term
1783, and judgment was figned for want of a plea, at the enfuing
*September* Term.

*Bradford* moved to fet the judgment of this Court afide, or to o-
pen it, in order to admit the Defendant to plead the proceedings
and difcharge in *New-Jerfey.*

Upon the argument it was ftated, and agreed, that no perfon was
entitled to relief under the Infolvent Law of *New-Jerjey*, who was
not born in that ftate, or had not refided in it one year free from ar-
reft ; that a man indebted to any amount was entitled to the benefit
of it ; that a perfon not in execution was not excluded ; that the Act
requires notice to be inferted in the public papers of *New-York* if the
debtor lives in *Eaft Jerfey*, or in thofe of *Pennfylvania* if he lives in
*Weft-Jerfey* ; and that every debtor, who complied with the terms
of the Act, became thereby exprefsly difcharged from all debts due at
the time of the affignment of his effects for the ufe of his creditors, or
contracted for before that time and payable after, " *fo far as regards
the imprifonment or detention of his perfon.*"

*Bradford* and *Lewis*, in fupport of the motion, contended that the
benefit and effect of the *New-Jerfey* law ought, in the prefent cafe,
to be extended to *Pennfylvania*, as well by the general principle of
the law of nations, as by the particular obligation arifing from the ar-
ticles of confederation.

1. They obferved, that by *the Law of Nations*, every tranfac-
tion, not yet compleated, which has a view to its completion in a
foreign country, muft be determined according to the municipal law
of that country : But, if perfectly compleat in the country in which
it originated, the *Lex Loci* that decided, muft protect it in every o-
ther country where the validity of the tranfaction is called in quef-
tion. 1 *Black. Rep.* 258. 2 *Burr.* 1078. *Finch* 186. 2 *Show.*
231. If the validity of a contract depends upon the laws of a for-
eign country in which it is perfected, and cannot be affected by any
arguments drawn from the laws of the country where a fubfequent
action is brought, certainly a judicial decifion (which, like an Act
once in force, but afterwards repealed, vefts a right in the party,
though its immediate operation is impeded) cannot be otherwife ex-
pounded and enforced than by the laws of the country where it is
pronounced : And proceedings under the Infolvent Act amount to a
judicial decifion ; for, they determine a debt, and give a remedy.
*Sir T. Raym.* 473. They might, indeed, be faid to amount to
more ; as, in giving the creditor all the advantage of the debtor's
effects they become a fpecies of execution, and, therefore, may be
confidered a fatisfaction. It is no fmall injuftice, when a debtor
has been compelled to affign all his effects, when he has given every
fatisfaction that he poffibly can, to purfue his footfteps, on every
change of fituation, and commit him again and again into cuftody.
If the fuit in *New-Jerfey* had terminated in another manner, for in-
ftance,

1786. stance, by a verdict in favor of the Defendant, that would clearly have been a bar to the action here.

2. But, should the Defendant find no protection under the law of nations, *the 4th Article of the Confederation*, effectually supplies that defect. The article declares, that " full faith and credit shall " be given in each of these States to the records, acts, and judicial " proceedings, of the Courts and Magistrates of every other State." Now, if a judgment, or other judicial proceeding in *New-Jersey* had not been evidence before, this provision (to the true sense of which the law of *Pennsylvania* is subservient) would have made it so—if it was only *prima facie* evidence before, this would render it conclusive. What Lord *Mansfield* declares in *Doug. 5.* to be the case with respect to certain Courts in *Westminster-Hall* (whose decisions and proceedings are unexaminable evidence) is also true when applied to the several Courts of Justice in the States of the *American* Union ; and the discharge in *New-Jersey* may be carried about by the Defendant into each of those states, as an impenetrable suit of armour to guard him from all future attacks upon his liberty, for a cause of action existing at the time it was granted.

The motion was opposed by *Coxe, Ingersol,* and *Sergeant,* who argued that judgments in foreign Courts were only *prima facie* evidence, except in Courts of Admiralty, whose decrees were conclusive, because founded upon the law of nations, which is common to all the world ; that as a judgment without satisfaction could not bar an action for the same debt in another country, *3 Atk. 598.* much less would the proceedings under the Act in question, which did not extinguish, or even alter the debt ; but only discharged the person of the debtor from arrest within the State of *New-Jersey.* That this was entirely a municipal regulation, calculated to protect the inhabitants of *New-Jersey* from their creditors in *New-York* and *Pennsylvania* ; to the inhabitants of which states, the citizens of *New-Jersey* (owing to their having no sea-port, and paying an interest of 7 *per Cent.* for money) were constantly indebted ; so that the extention of the Act did not deserve to be favored here. That in the case of *Lopez*, in the Court of Appeals, and in the cause between *Connecticut* and *Pennsylvania,* depositions taken in *Connecticut,* according to one of their statutes, were not admitted to be read, because contrary to the common law. That the payment of interest for money lent, was the only instance regulated by foreign laws. That a certified *English* bankrupt, was liable to arrest in *Ireland.* That, even if the validity of a foreign proceeding is admitted, a right to examine the ground, upon which it was founded, remains ; and, therefore, that it might be proved, that the Defendant was not entitled to the benefit of the Act ; as he was not a native of *New-Jersey,* nor had he resided there one year previous to the arrest. That, upon the whole, it would be extremely hard, after the creditors on the spot who, having joined in the petition according to the directions of the Act, had shared the spoils; an absent creditor, who never knew of the discharge, should be barred.

SHIPPEN,

Shippen, *Prefident.*——This is a motion, in effect, to difcharge the Defendant from execution, on the ground of his having been confined by a *Ca. Sa.* for the fame Debt in the State of *New-Jerfey,* and there difcharged as an infolvent Debtor, by virtue of an Act of Affembly of that State : And the queftion is, whether the difcharge of his perfon from imprifonment there, will intitle him to a like difcharge here ?

1786,

It is contended, that the decifions of even foreign Courts of Juftice, fhall have a binding force here ; and that in the fituation in which we ftand with regard to *New-Jerfey,* a Sifter State, we are under an additional obligation to pay refpect to the decifions of the Courts there, by the terms of the Articles of Confederation.

The Judgment of a foreign Court eftablifhing a demand againft a Defendant, or difcharging him from it, according to the laws of that country, would certainly have a binding force here : And not only the decifions of Courts, but even the Laws of foreign countries, where no fuits have been inftituted, would in fome cafes be taken notice of here ; where fuch laws are explanatory of the contracts, and appear to have been in the contemplation of the parties at the time of making them ; as if the intereft of money fhould be higher in a foreign country where the contract was made, than in that where the fuit was brought, the foreign intereft fhall be recovered, as being underftood to be part of the contract. But it does not follow that every order of a foreign Court with refpect to the imprifonment of the Defendant's perfon, or any local laws of that country, with regard to his releafe from confinement, can have the effect of reftraining us from proceeding according to our own laws here. The infolvent law of *New-Jerfey* relates not to the fubftance of the Plaintiff's demand, which had already been eftablifhed, but merely authorizes the Court to make an order, on certain terms, for the difcharge of the Defendant's perfon from imprifonment ; which order has no connection with the merits of the caufe, and cannot with any propriety be called the judgment of the Court in that action ; and the law itfelf on which the order was founded, is a private act, made for that particular purpofe ; it is local in its nature, and local in its terms.

Infolvent laws fubfift in every State in the Union, and are probably all different from each other ; fome of them require perfonal notice to be given to the creditors, others do not, as in the prefent cafe ; and they have never been confidered as binding out of the limits of the State that made them. Even the Bankrupt Laws of *England,* while we were the fubjects of that country, were never fuppofed to extend here, fo as to exempt the perfons of the Bankrupts from being arrefted.

The Articles of Confederation, which direct that full faith and credit fhall be given in one State to the Records, Acts, and judicial proceedings, of the others, will not admit of the conftruction contended for, otherwife executions might iffue in one State upon

the

1786.    the judgments given in another; but feem chiefly intended to oblige each State to receive the records of another as full evidence of fuch Acts and judicial proceedings. *

Whatever might have been the effect of an order or judgment of the Court of *New-Jerfey*, if it had actually difcharged the Defendant from the Plaintiff's *demand*, the prefent order, as well as the Act of Affembly on which it is founded, is local in its terms, and goes no further than to difcharge him from his imprifonment in *the Gaol of Effex County in the State of New-Jerfey*; which, if the fulleft obedience were paid to it, could not authorize a fubfequent difcharge from imprifonment, in another Gaol, in another State.

The motion is, therefore, not granted.

* See poft. *Phelps* vs. *Holker*, and *Millar* vs. *Hall* in the *Supreme Court.* p. 229
p. 261