Joice *vs.* Scalrs.

No. 106.—WILLIAM A. JOICE, plaintiff in error, *vs.* JAMES and PETER SCALES, defendants in error.

[1.] As a general principle, the *lex loci* applies only to the interpretation of contracts, and the remedy on them must be prosecuted according to the laws of the country in which the action is brought. Under this rule, if a party be discharged from imprisonment only, he remains liable for the same debt in another State.

[2.] This rule is not in conflict with the clause of the Federal Constitution, which declares, that " full faith and credit shall be given, in each State, to the public acts, records and judicial proceedings in every other State;" for that applies to such records, &c. as *pleadings and evidence.*

Illegality, in Bibb Superior Court. Heard and decided by Judge POWERS, May Term, 1855.

William A. Joice was arrested under a *capias ad satisfaciendem,* issued from the Superior Court of Bibb County at the instance of J. and P. Scales.

The defendant filed an affidavit of illegality to the *ca. sa.* alleging that the same was proceeding against him illegally, because " the obligation upon which said judgment is founded. was made in the State of North Carolina; and that defendant had been, by the judgment of a Court of competent jurisdiction, in that State, discharged from arrest and imprisonment on account of the debt upon which the present *ca. sa.* had issued," which plea or ground Counsel for plaintiff moved the Court to strike out. The Court sustained the motion, and Counsel for defendant excepted.

CONEY; MILLER & HALL, for plaintiff.

RUTHERFORD, for defendants.

*By the Court.*—STARNES J. delivering the opinion.

[1.] We may safely assume, as a general principle, that the *lex loci* applies only to the interpretation of contracts to

their construction, and that the remedy on them must be prosecuted according to the laws of the country in which the action is brought. This rule is approved by our reason; and it seems to be now regarded, generally, as the correct rule in the Courts of England and of the United States. It has the sanction of learned Jurists in other countries, as is shown by Judge *Story*, in his *Conflict of Laws*, §§573, 574. (See, also, 2 *Kent Com.* 462. *Whittemore vs. Adams*, 2. *Cow.* 620.)

Under the effect of this rule, if a party be discharged from imprisonment only, he remains liable to arrest for the same debt in another State; for the imprisonment is only one method of enforcing the remedy, and in no wise has relation to the contract.

Some conflict with this doctrine may perhaps be found in a few cases; but it probably has its origin in the case of *Molan vs. Fitz James*, (1 *Bos. & P.* 138;) and arises out of a misapprehension of that case. That was a case where a bond was given in France, not binding on the person of the obligor, according to the contract. It was sued in England; and Lord Ch. J. *Eyere* held, that "if it appears that this contract creates no personal obligation, and that it could not be sued as such by the laws of France, there seems to be a fair ground on which the Court may interpose to prevent a proceeding so oppressive as a personal arrest in a foreign country," &c. Again, he says, "I cannot conceive that what is no personal obligation in the country in which it arises, can ever be raised into a personal obligation by the laws of another. If it be a personal obligation there, it must be enforced here, in the mode pointed out by the laws of this country. But what the nature of the obligation is, must be determined by the law of the country where it was entered into; and then this country will apply its own law to enforce it."

Here, it will be observed, the contract itself, *ex directo*, excluded personal liability. There is a difference between this and a contract which binds the party personally, but which the laws of the country enforce only *in rem*, and not *in personam*.

Joice *vs.* Scales.

It is from a failure to apprehend this distinction, it seems, that some Courts have supposed they were following the above case, in holding that the law of the contract must control such a case as that before us; and that a party discharged from imprisonment by the laws of the State where the contract was made, cannot be arrested on the same debt in another State.

As we have suggested, the rule we lay down is founded upon plain principles of reason and propriety. A different principle would give to the laws of a State extra territorial operation, causing those of one State to control in another, in the enforcement of remedies.

[2.] This rule is not in conflict with the clause of the Constitution of the U. S. which declares that " full faith and credit shall be given, in each State, to the public acts, records and judicial proceedings of every other State." This clause is not to be received in the fullest import of the terms. It is referrible to such records, &c. as *pleadings* and *evidence*. Any other construction, which would give the same effect to a foreign judgment as to our own, would, indeed, be to give the laws of one State complete operation in another—would be to make a judgment in one State bind property in another. (See *James vs. Allen*, 1 *Dall.* 188. *Mills vs. Duryee*, 7 *Cranch*, 481. *Whittemore vs. Adams*, 2 *Cow.* 633.)

Let the judgment be affirmed.