3705. ÆTNA LIFE INSURANCE COMPANY *v.* CONWAY.

An applicant for life insurance must act "in the utmost good faith" in disclosing to the insurer all things material to the risk about which information is sought. A misrepresentation in reference to any matter which materially affects the nature, extent, or character of the risk will void the policy; and the wilful concealment of a material fact will have the same effect. Where an applicant for life insurance wilfully conceals from the insurer the fact of a previous illness, such concealment will avoid the policy if the disease was of such a character as to enhance the risk. The fact that the insured may have died a short while after the policy was insured, from a disease with which he was not affected when the policy was issued, does not conclusively show that the fact of the previous illness was not material, within the meaning of the rule above announced.

DECIDED SEPTEMBER 30, 1912.

Action on insurance policy; from city court of Atlanta—Judge Reid. June 24, 1911.

*Smith, Hammond & Smith,* for plaintiff in error.
*Hill & Wright,* contra.

POTTLE, J. On February 4, 1909, William O. Conway made written application to the plaintiff in error for a policy of life insurance on his own life. The applicant was examined as to the condition of his health by the company's physician, and on Feb-

ruary 8, 1909, the policy was issued in favor of the wife of the insured as beneficiary. A few days after the policy was issued the company received information which aroused its suspicions in reference to the physical condition of the insured, and in May, after several efforts had been made by the company's physician to obtain another examination, the insured was finally again examined by the physician. From this examination it developed that the insured was suffering with Bright's disease, from which he died in September, 1909. As soon as the company ascertained that the insured had Bright's disease, it tendered back the premium and demanded the surrender of the policy, for cancellation. The insured refused to comply with this demand, and after his death his widow brought suit upon the policy. The company defended upon the ground that the insured had made material misrepresentations in his application and had wilfully concealed material facts which enhanced the risk, and that for these reasons the policy was void.

The application was copied in and made a part of the contract of insurance. The policy contained the following stipulation: "All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and no such statement shall avoid the policy or be used in defense to a claim under it, unless it is contained in the written application for this policy and copied hereon." The following representations were made by the insured in his application: "I do hereby declare that I am in sound health and have no disease or ailment not fully set forth herein; that the statements and answers herein made (including those on the second page hereof) and signed by me are complete and true, and I agree that they shall form a part of the contract or policy issued by said company upon my life." In the application the insured was asked to give the names and addresses of all the physicians whom he had consulted within the last five years. He answered that he had consulted none except Dr. J. B. Benson and Dr. G. W. Willett. He was further asked to state the particulars of each illness he had had during the last seven years, with the names of the attending physicians. His reply was as follows: "Jaundice 7 years ago, one month. Colic one day. (No gall-stone or kidney stone). Diabetic." The insured was also asked, "Have you had any of the following diseases? Answer yes or no opposite

each." To each of which the insured answered, "No," as follows, to wit: "Habitual headache, no; liver complaint, no; neuralgia, no," etc. It is undisputed that during the summer of 1907 the insured was ill for several weeks. He was examined and treated by one physician, who diagnosed the disease as probably acute Bright's disease. The symptoms were severe pains in the back, followed by fever, severe headache, and swelling of the eyes, face, and ankles, and other parts of the body, and a loss of twenty-five pounds in weight. It is further undisputed that the statement of the insured that he had consulted no physician other than Drs. J. B. Benson and G. W. Willett was untrue, and that he had in fact consulted and been treated by four or five other physicians at various times. It was also shown that the answers of the insured, that he had never had habitual headache, liver complaint, and neuralgia, were untrue; that as a matter of fact, not a great while before the policy was issued, he had been treated by one physician for habitual headache, and that at other times he had also been treated for liver complaint and neuralgia. The testimony of the experts indicates that these disorders are symptomatic of Bright's disease. He was treated for habitual headache by Dr. Willett in 1908, and, while this physician was not positive that the insured had Bright's disease at the time; the condition of the insured was such as to indicate auto-intoxication, a symptom of kidney disease and an indication of Bright's disease. Neither did the examination of this physician, nor the examination of Dr. Todd, the company's physician, in 1909, disclose the presence of albumen in the urine, but the evidence is conclusive that a man might have Bright's disease and the presence of albumen not be discovered upon an examination of the urine. In May, 1909, when Dr. Todd again examined the insured, he was in an advanced stage of Bright's disease. There was testimony of expert physicians that this disease might develop within a few weeks, and there was also evidence of non-experts to the effect that at the time the policy was issued, the insured was a robust man and apparently in sound health. While the evidence as a whole strongly points to the conclusion that the insured had Bright's disease at the time the policy was issued, and probably for some time before, there was perhaps enough evidence for the jury to find that he was in sound health at the time of the issuance of the policy. The case was submitted to the jury and

they found for the plaintiff. The defendant's motion for a new trial was overruled.

The law applicable to the issues raised in the case is found in the following sections of the Code of 1910: "§ 2479. Every application for insurance must be made in the utmost good faith, and the representations contained in such application are considered as covenanted to be true by the applicant. Any variation by which the nature, or extent, or character of the risk is changed will void the policy." "§ 2480. Any verbal or written representations of facts by the assured to induce the acceptance of the risk, if material, must be true, or the policy is void. If, however, the party has no knowledge, but states on the representation of others, bona fide, and so informs the insurer, the falsity of the information does not void the policy." "§ 4381. A failure to state a material fact, if not done fraudulently, does not void; but the wilful concealment of such a fact, which would enhance the risk, will void the policy." "§ 2483. Wilful misrepresentation by the assured, or his agent, as to the interest of the assured or as to other insurance, or as to any other material inquiry made, will void the policy." It is immaterial whether the statements made by the applicant for insurance were representations or warranties, since the effect of such statements must be determined by the provisions of these sections of the code, without reference to whether the statements may be regarded technically as representations or as warranties. If the representations were untrue and the nature or extent or the character of the risk was changed by the representations, the policy was void under the express terms of § 2479. Any statement or representation, whether verbal or written, made to induce the acceptance of the risk, if material to the risk, must be true, or the policy is void under the express terms of § 2480, unless the applicant informs the company that the statements are made upon hearsay and are also made in good faith. The wilful concealment of a material fact which tends to enhance the risk voids the policy, under the express terms of § 2481; and, under § 2483, a wilful misrepresentation in reference to any material inquiry will void the policy. In the case of a representation the important inquiry is: 1st. Was the representation false? 2d. If false, was it made in reference to a matter material to the risk? In the case of a concealment of a fact, the important inquiry is: 1st. Was the con-

cealment wilful? 2d. Did it relate to a matter material to the risk?

The insured stated unequivocally that he was in sound health. If this was untrue and if he in fact was suffering from a serious disorder which made him an undesirable risk, the policy would be void. *Southern Life Ins. Co. v. Hill,* 8 *Ga. App.* 857 (70 S. E. 186). We do not mean to say that if an applicant for insurance acts in the utmost good faith and fairly discloses to the company all of the information in his possession which would throw any light upon the condition of his health and the desirability of the risk, the policy would be void, even· though it developed that he suffered from a disorder as to which he had no knowledge, and the existence of which was not ascertained by the examining physicians. But fraud voids all contracts, and there is nothing in the law relating to insurance contracts which alters this universal principle. Indeed, as if to emphasize the doctrine, § 2479 of the code provides that every application for insurance must be made in the "utmost good faith," and any variation which changes the nature, the extent or the character of the risk will void the policy. The question of the materiality of a representation or of a fact concealed is primarily one for the jury.

The position assumed by counsel for the defendant in error is that the finding of the jury in favor of the plaintiff should not be disturbed, because they could have found that the insured did not have Bright's disease at the time the policy was issued, and that if the disease developed afterwards and from causes which did not exist at the time the policy was issued, none of the representations made by the insured in reference to his previous illness and in reference to the physicians whom he had consulted and by whom he had been treated could have materially affected the risk. We do not believe that this is the exclusive test of the materiality of a representation. When an application for insurance is made, the attitude of the company is that if, in the opinion of its officers, the applicant is a desirable risk, his application will be accepted and the policy issued upon payment of the premium required. It is purely a matter of voluntary contract. The company is not bound to issue the policy, and may refuse to do so without giving any reason for its action. The question therefore is, if the applicant had dealt "in the utmost good faith" and disclosed the nature and

extent of his previous illness and disclosed the names of the physicians by whom he had been treated, would he still have been a desirable risk and would the company have accepted him as such? "In general it may be said that the test, in determining whether questions contained in an application for insurance are material, is whether the knowledge or ignorance of the facts sought to be elicited thereby would materially influence the action of the insurer." Cooley's Briefs on the Law of Insurance, vol. 3, p. 1953. If the applicant in the present case had truthfully answered the questions propounded to him, inquiry from the physicians by whom he had been treated, and a consideration of the symptoms which developed during the progress of the illness from which he had suffered,. would have disclosed a condition which one of the physicians diagnosed as the beginning of Bright's disease. As explained by the company's agent in the testimony: "The reason for making inquiry of an applicant for insurance as to the sickness that he has previously had and the physicians who waited upon him is with a view of ascertaining if there has been any sickness that would materially affect the applicant's longevity, and to make further inquiry about the sickness referred to in the application. That is with a view of getting the details, detailed information regarding any sickness that may look suspicious to them, from those doctors." The company's physician, Dr. Todd, testified that if a man suffered with the disorders which the insured had during 1907 and 1908, he would be a very doubtful insurance risk; that "it would impair the risk very much, knowing of those things, especially with the neuralgia, as that is a symptom of Bright's disease, and headaches are also a symptom." And again he says: "Had I known those things, I would certainly have examined him a time or two. I would not have passed him on one examination and I would certainly have made inquiry about it;" and further, "If at the time I examined him first I had been told that he had neuralgic influenza, enlargement of the liver, congestion about the brain, I would not have reported him to the company until further examination, assuredly I would not. I would have inquired about those things."

It is suggested that there is nothing to show that the insured acted in bad faith; that so far as appears, he may have forgotten about the physicians he consulted and whose names he withheld

from the company; that he may have honestly overlooked the fact that he was ill in 1907 for about eight weeks, during which time he was treated by two or three physicians for disorders which were symptoms of Bright's disease. It appears, from the evidence, that after this protracted illness in 1907, the accused brought suit against an indemnity company to recover for this very illness. The suit was filed October 22, 1907, the petition was verified by the affidavit of the insured, and in it he alleged that he was taken ill on April 13, 1907, and was continuously sick until May 14, 1907, and, after being up for three days, was again taken ill, and remained so until the 8th day of July, 1907; that during this period he was confined in the house and wholly disabled and prevented from performing any and every duty pertaining to his occupation and business for the period of twelve weeks and three days. It is inconceivable that the insured could have been acting in good faith when he concealed the existence of this protracted illness from the company, after having brought suit in reference to it, and when he concealed the names of the physicians who treated him for it; and, while the question of bona fides in a case of this character is primarily one for the jury, the evidence in this record demands the finding that the insured had not acted in good faith, and that the representations made by him and the concealment of the fact that he had suffered from a long and protracted illness and had been treated for other disorders which were symptomatic of Bright's disease, were material to the risk and avoided the policy. The evidence further disclosed that the company had no knowledge in reference to this misrepresentation, until after the policy was issued, and that promptly upon discovery of the fraud it offered to restore the premium and cancel the policy.

Under the facts appearing in this record, the evidence demanded a verdict in favor of the company, and the court should have granted a new trial upon this ground, without reference to the special assignments of error therein contained. See, in this connection, *Maddox* v. *Sou. Ins. Asso.*, 6 *Ga. App.* 681 (65 S. E. 789); *Grand Lodge Knights of Pythias* v. *Barnard*, 9 *Ga. App.* 71 (70 S. E. 678); *Northwestern Life Ins. Co.* v. *Montgomery*, 116 *Ga.* 799 (43 S. E. 79).; *Johnson* v. *American Ins. Co.*, 134 *Ga.* 800 (68 S. E. 731).                    *Judgment reversed.*