## JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY *v.* YATES.

214

No. 10802. MARCH 21, 1936. REHEARING DENIED MARCH 31, 1936.

*Smith, Smith & Bloodworth* and *Boykin & Boykin,* for plaintiff in error.

*Smith & Millican,* contra.

RUSSELL, Chief Justice. The writ of certiorari was granted by this court to review the decision of the Court of Appeals in this case. 50 *Ga. App.* 713. The holding of the Court of Appeals, as stated in the single paragraph constituting the syllabus is: "The action was brought in this State on a life-insurance policy applied for and issued in the State of New York, in which State both the insured and the beneficiary lived when the policy was issued. The insurance company denied liability solely on the ground of false answers in the application for insurance, attached to and made a part of the policy, and contended that the law of New York rather than that of this State was applicable. The verdict in favor of the beneficiary was supported by competent evidence; and no error of law appears." It is not considered necessary that the numerous assignments of error contained in the petition for certiorari be here set out; for each and every one of them is based on the contention of the insurer that the statutes and decisions of the State of New York, rather than those of Georgia, should determine the effect of alleged false statements made in the application for insurance, in the trial of the case in the courts of this State. One of the controlling questions in the adjudication now before us is whether the remedial processes applicable in a suit in Georgia shall give way to and be superseded by the laws of New York because the contract was executed in the State of New York and intended there to be performed. Suit was brought upon the contract in the courts of Georgia. The question is whether, as to the remedial features of the action, the lex loci contractus shall prevail over the law of the forum.

In *Massachusetts Benefit Life Association* v. *Robinson,* 104 *Ga.* 256 (8) (30 S. E. 918, 42 L. R. A. 261), it was held: "The materiality of representations made by the insured in his application, under the laws of Georgia, is a question for the jury to decide. The manner in which this question shall be determined, being a

matter affecting the remedy only, and not the 'validity, form, or effect of the contract,' is to be controlled by the lex fori, and not by the lex loci contractus." Mr. Justice Cobb, delivering the unanimous opinion of this court, said: "That the lex loci controls as to the validity, form, and effect of the contract, and the lex fori as to the remedies thereon, is simply a statement of elementary law. The courts of the State of Georgia will recognize this contract as a valid contract, because it appears to be such under the laws of Massachusetts and is clearly such under the laws of this State, but will give the plaintiff and the defendant respectively, for the purpose of enforcing it on the one hand or defeating it on the other, such remedies only as are given to other persons who sue or are sued in the courts of this State. It is immaterial, therefore, for us to consider what is the law of Massachusetts in reference to the tribunal, or what part of the tribunal, that determines the materiality of the misrepresentations relied upon to defeat a contract of insurance which is the subject of a suit in this State. These are questions which each State is entitled to decide for itself, and to that end erect tribunals and lay down rules of procedure therein. The law of Georgia can declare what questions shall be passed upon by the court and what questions shall be passed upon by the jury. Persons seeking either to enforce or defeat contracts made in another State with citizens of this State, when they sue or are sued in the courts of this State, have no right to say that the tribunal fixed by its laws is not satisfactory to them and to demand a tribunal erected in accordance with the law of the State in which the contract is made. See Dicey on Conflict of Laws, 711; Story on Conflict of Laws (8th ed.), §§ 556, 557, 558. This doctrine is fully recognized in the case of *Joice* v. *Scales,* 18 *Ga.* 725, and *Toomer* v. *Dickerson,* 37 *Ga.* 428. In the latter case Judge Warner in the opinion lays down the principle clearly as follows: 'It was further insisted in the argument, that although the bond was executed in Georgia, it was intended to be, and was in fact, a South Carolina contract, and as such should be governed by the laws of the latter State in its enforcement in the courts of this State. Conceding ex gratia that it is a South Carolina contract, the plaintiff seeks to enforce it in the courts of this State. Neither the validity nor the construction of the contract is questioned. The only controversy between the parties is as to the remedy upon that contract

in the courts of this State. The question here is, can the creditor enforce his remedy against the security upon his South Carolina contract in the courts of this State, in accordance with our laws regulating that remedy? We give to him the same rights and remedies in our courts, for the enforcement of his contract, as we give to our own citizens; no more, no less. Mr. Justice Story states the rule correctly when he says: "Whenever a remedy is sought, it is to be administered according to the lex fori, and such a judgment is to be given as the laws of the State, where suit is brought, authorize and allow, and not such a judgment as the laws of other States authorize or require." Story's Conflict of laws, 954, § 572; Dela Verga v. Vienna, 20 Eng. Com. Law Rep. 387; Whittemore v. Adams, 2 Cowen's Rep. 626. When a party comes into the courts of this State to enforce his remedy upon his contract, that remedy will be enforced in accordance with the laws of this State regulating that remedy, and not according to the remedy provided for the enforcement of similar contracts in the State of South Carolina, although the contract may have been made in the latter State.' See also *South Carolina Railroad Co.* v. *Nix, 68 Ga.* 572. As it has been held by this court in the case of *Phenix Ins. Co.* v. *Fullon,* 80 *Ga.* 224 [4 S. E. 866], that it was proper to submit to the jury the question as to whether or not a misstatement made in the application for a policy of fire-insurance was material and would have the effect of avoiding the policy, and this being, as long as that decision stands, the established procedure to be followed in such cases, there was no error in the present case in submitting to the jury the question of the materiality of the misrepresentation alleged to have been made by the insured in his application for reinstatement."

In *Johnson* v. *Ætna Insurance Co., 123 Ga.* 404 (51 S. E. 339, 107 Am. St. R. 92), in which all the Justices concurred except Simmons, C. J., absent, this court ruled that "Limitations in an insurance policy upon the authority of the agent of the company to waive the conditions of the contract of insurance are to be treated as referring to waivers made subsequently to the issuance of the policy. *Mechanics Ins. Co.* v. *Mutual Bldg. Ass'n,* 98 *Ga.* [262] 266, approved and reaffirmed." In the *Ætna* case attention was called to the conflict between the rulings in *Mechanics Ins. Co.* v. *Mutual Bldg. Ass'n,* 98 *Ga.* 262, and *Thornton* v. *Travelers Ins. Co.,* 116 *Ga.* 121 (42 S. E. 287, 94 Am. St. R. 99). After thorough discus-

sion of the subject the court held: "Our conclusion is that the ruling in the case of *Mechanics Ins. Co.* v. *Mutual Bldg. Ass'n,* 98 *Ga.* 262, is sound; that it is controlling of the case at bar; and that anything to the contrary in the case of *Thornton* v. *Travelers Ins. Co.,* 116 *Ga.* 122, must yield as authority to the earlier case." Chief Justice Simmons fully concurred in the rulings in the *Robinson* case and in the *Mechanics Ins.* case, supra; and therefore it must be presumed that had he been present in the *Johnson* case, supra, and not upon his death-bed, the *Thornton* case would have been overruled.

It is insisted in the present application for certiorari that the contract here involved is governed by the lex loci contractus, and that the insurance contract was avoided by reason of false representations of the insured in his application for insurance, and that under the law it was for the court and not the jury to determine whether the alleged misrepresentations are in fact material. In support of this proposition, counsel rely upon the ruling of the Court of Appeals of New York in Minsker *v.* John Hancock Mutual Life Insurance Co., 254 N. Y. 333 (173 N. E. 4), in which it was held that "False answers in written application attached to life policy, with respect to medical advice and hospital treatment, as matter of law defeated recovery, though insured gave truthful oral answers." It must be borne in mind that until January 1, 1907, the courts of New York had decided that if the medical examiner of a life-insurance company was truthfully told by the applicant for a policy of facts which under the terms of a policy would make it void if not noted upon it, the company could not avail itself of the defense that such facts were not stated in the policy, the underlying principle being that it would be a fraud upon the insured to accept pay for a policy which the company through its agent knew was void when delivered. In 1906 the legislature of New York passed the New York statute upon which the decision in Minsker's case, supra, was based (Laws of 1906, c. 326). This act was doubtless passed for some reason peculiar to the State of New York; for, as said by the Court of Appeals of New York in Minsker's case, "the statute applies only to life-insurance corporations, and not to other insurance companies or associations." And the reasons given for the passage of the New York statute are to be seen in Archer *v.* Equitable Life Assurance Society, 218 N. Y. 18. (112

N. E. 433). The explanation of the headnote in Minsker's case which we have quoted is as follows: "The answers to questions 14 and 15 as written and annexed to the policy establish as a matter of law that they are material to the risk. The plaintiff is bound by the answers as written, since the application was physically annexed to the policy of insurance, which she received from the insurer. Being a part of the policy, the statements in the application had at least the effect of erroneous and material representations under the rule at common law;" and several New York cases were cited in support of the opinion. The 14th and 15th questions in the Minsker case are similar to those asked the insured in the case now before us. "14. Have you had any medical advice during the past five years? State . . the names and addresses of the physicians who treated you. 15. Have you ever received or applied for treatment at any hospital, . . cure, or other institution?" Georgia has no such law as the New York statute of 1906. By this last enactment and construction of the court of last resort of New York, the courts are to determine the materiality of all representations made by the applicant for life insurance. By the law of Georgia the jury are to determine the materiality of such statements as may be made by the applicant for life insurance. To our minds, therefore, the only question which arises is whether the laws of New York shall be given extraterritorial effect, so as to include the geographical limits of Georgia as well as of New York. If we now concede this as to life insurance, where will it end as to other matters upon which New York may hereafter see fit to pass laws? We are of the opinion, as remarked by our predecessors, that we are not required to permit any foreign jurisdiction to overlap the domain which Georgia calls her own. To do this would destroy our right of independent existence.

The validity of a contract made in another State and sought to be enforced in this State is to be determined and controlled by the law of the State of the contract; but as to all remedies to be applied, either in the enforcement of such contract or in defeasance thereof, the law of the forum prevails. In *Joice* v. *Scales,* 18 *Ga.* 725, it was not only held that "As a general principle, the lex loci applies only to the interpretation of contracts, and the remedy on them must be prosecuted according to the laws of the country in which the action is brought," but the court also held that "This

rule is not in conflict with the clause of the Federal constitution which declares that 'full faith and credit shall be given, in each State, to the public acts, records, and judicial proceedings in every other State;' for that applied to such records, &c., as *pleadings* and *evidence*." In *Latine* v. *Clements, 3 Ga.* 426, Judge Nisbet defined the requirements of the Federal constitution referred to above, and in delivering the opinion of this court said: "Congress has declared what the constitution means by *full faith and credit;* it has enacted that the judgments of State courts shall have the same faith and credit in other States as they have in the State where they are rendered. Act of Congress of 26 of May, 1790, ch. 11; 3 Story Com. on the Const., ch. 29, sec. 1297 to 1307. They are put upon the same footing with domestic judgments." He further said that this was a case of an administration in Georgia, and that "The administration in Georgia is necessary, because the Virginia executor has no power to act in Georgia; the two States are sovereign, and, as to each other, foreign." In *Mitchell* v. *Cox*, 28 *Ga.* 32, this court held: "If H. dies in Arkansas, and there is a creditor of the deceased in Georgia, and assets belonging to the estate here, and the estate of H. be insolvent, the creditor in this State is entitled to receive his pro rata share of the entire fund in both States; and neither justice nor the courtesy of States requires that the surplus be transmitted by the ancillary administrator here to the principal administrator in Arkansas." In delivering the opinion Judge Lumpkin said: "Whether Mitchell holds the note of Buffington, belonging to the estate of White E. Harden, or the proceeds which stand in the place of it, makes no difference. In the settlement of the note he was justifiable in allowing as a set-off, or part payment, the counter-claims held by Buffington against Harden. He could not have compelled payment of Buffington, except for the excess. But as to the surplus, if there be any, the courtesy between States does not, we apprehend, extend so far as to require this fund to be transmitted to the State of Arkansas, and force the creditor in this State to go there to collect his debt. . . All that justice demands is, that when an estimate is made of the whole estate of Harden—if the part coming to the claim of Cox would be less than the fund in Georgia—in that event, for the overplus to be sent by the ancillary administrator here to the principal administrator in Arkansas. We are not prepared to say that even this is not going too far."

Following this quotation the entire membership of this court, in *Owsley* v. *Bowden,* 161 *Ga.* 884, 891 (132 S. E. 70, 44 A. L. R. 795), spoke as follows: "But it is said that under the law of Alabama the claims of all the plaintiffs are barred, and for this reason, regardless of anything else, the petition is demurrable and should be dismissed. If it be conceded that the laws of Alabama governing the distribution of estates should govern in the distribution of the Georgia property owned by an Alabama testator, it does not, in our opinion, follow that statutes of limitations adopted in Alabama should prevail over Georgia statutes upon the same subject. They are purely remedial; and it has always been held that the law of the forum determines the remedy and determines when a claim may be enforced in the courts of that State." Citing *Thomas* v. *Clarkson,* 125 *Ga.* 72 (54 S. E. 77, 6 L. R. A. (N. S.) 658), and *Latine* v. *Clements,* 3 *Ga.* 426; also quoting from Wilson *v.* Hartford Fire Insurance Co., 164 Fed. 817 (90 C. C. A. 593, 19 L. R. A. (N. S.) 553), in which the opinion was delivered by Judge Sanborn (with whom Judge Van Devanter, later a Justice of the Supreme Court of the United States, presided) as follows: "The property of the estate which is situated in Kansas is not controlled nor is its administration or distribution governed by the laws of the domicile of the testator. The laws of Illinois have no extraterritorial force, and they are powerless in the State of Kansas. The property of the estate of the testator in that State is subject to and it must be administered and distributed in accordance with the laws of the State of its situs. Under the statutes of Kansas the property of deceased persons in that State, whether they were residents or non-residents, is subject to the payment of their debts due to citizens of other States to the same extent as it is to the payment of those owing to its own citizens. . . The effect of this legislation is that the application of the Kansas property of a deceased non-resident of that State, whether testate or intestate, to the payment of his debts, is governed exclusively by the laws of Kansas, and the laws of his domicile can have no effect upon any part of that property until those debts have been ascertained and paid."

In the unanimous opinion of this court in *Joice* v. *Scales,* 18 *Ga.,* heretofore quoted, it was said: "We may safely assume, as a general principle, that the lex loci applies only to the interpretation

of contracts [and] to their construction, and that the remedy on them must be prosecuted according to the laws of the country in which the action is brought. This rule is approved by our reason; and it seems to be now regarded, generally, as the ,correct rule in the courts of England and of the United States. It has the sanction of learned jurists in other countries, as is shown by Judge Story in his Conflict of Laws, §§ 573, 574. (See also 2 Kent's Com. 462. Whittemore *vs.* Adams, 2 Cow. 620). . . The rule we lay down is founded upon plain principles of reason and propriety. A different principle would give to the laws of a State extraterritorial operation, causing those of one State to control in another, in the enforcement of remedies." In response to the argument now made in this case, that "Full- faith and credit should be given in each State to the public acts, records, and judicial proceedings in every other State," the court in the *Joice* case held that the rule just laid down was not in conflict with that constitutional provision, and that a construction which would give the same effect to a foreign judgment as our own "would, indeed, be to give the laws of one State complete operation in another—would be to make a judgment in one State bind property in another." In support of the ruling of the Supreme Court in this case, Phelps *v.* Holker, 1 Dall. 261, James *v.* Allen, 1 Dall. 188, and Mills *v.* Duryee, 7 Cranch, 481, are cited. See also *Obear* v. *First National Bank of Birmingham,* 97 *Ga.* 587 (25 S. E. 335, 33 L. R. A. 384). The Court of Appeals did not err in affirming the judgment overruling the motion for new trial.

*Judgment affirmed. All the Justices concur, except Gilbert and Hutcheson, JJ., who dissent, and Beck, P. J., absent for providential cause.*

Gilbert, Justice, dissenting. This action upon a policy of life insurance in the amount of $2000 was brought in the city court of Carrollton by Mrs. Edna K. Yates against John Hancock Mutual Life Insurance Company. Verdict and judgment were rendered for the plaintiff. Motion for a new trial was made by the insurance company, and overruled. The case was taken to the Court of Appeals, where the judgment of the trial court was affirmed. Motion for a rehearing was denied. The case is now before this court on certiorari. The policy involved was a New York contract, having been applied for, issued, and delivered in the State of New

York. The first premium was paid by the insured, Harmon Harlin Yates, in the State of New York, he being then a citizen and resident of that State. The insured died in the State of New York, and proofs of death were made in that State. The application for insurance was in writing and print, executed by the insured on May 2, 1932, and a copy of the application was physically attached to the policy, which was dated May 12, 1932. The insured entered a New York hospital on May 29, 1932, where he died of cancer on June 23, 1932. The insurance company denied liability, and offered to return the premium paid, upon the ground that material misrepresentations had been made by the insured in his application for insurance, as follows: (a) That the insured had falsely stated that he was in good health. (b) That he had falsely stated that he had not, within the past five years, had medical advice for any disease or disorder. (c) That at the time of the delivery of the policy he was not in sound health. (d) That he falsely stated that he had never had cancer or tumor. (e) That he had falsely stated that he had never had or been treated for indigestion. The insurance company also pleaded and introduced in evidence section 58 of the insurance laws of New York (Laws of 1906, c. 326), hereinafter quoted; also two decisions of the court of last resort of New York, interpreting and construing the said statute and which are referred to later herein. The proof of death shows that in April, 1932, prior to the date of the application, the insured was treated by a physician in New York City for a disease or disorder diagnosed as secondary anemia; and this evidence is uncontradicted. He was also treated by the same doctor on four occasions at the office of the same doctor. The proof of death shows that he died at the New York Hospital on June 23, 1932, of cancer of the intestine, and that the insured first began to show symptoms of this disease in March, 1932. Over objection of the company the plaintiff sought to prove a waiver against the company, by certain testimony of the insured's wife that he had informed the agent that he had indigestion. The insurer contends that the contract sued on was a New York contract, that its validity is and should be governed by the law of New York, that on account of the material misrepresentations as above set forth and as made in his written application the company was not liable on the contract, that the same was void and unenforceable, and that no parol evidence of waiver was com-

petent or admissible. The Georgia Court of Appeals held that under the New York law the company was not liable; but it also held that under the law of Georgia, where the agent of the insurance company incorrectly records the answers of the applicant to questions propounded in the application as to matters material to the risk, after being informed by the applicant as to the facts, the agent's actual knowledge will be imputed to the insurer, and it will be held to be estopped from asserting the invalidity of the policy because of such incorrect statements as to material matters. The Georgia Court of Appeals also held that "The materiality of representations made by the insured in his application, under the laws of Georgia, is a question for the jury to decide. The manner in which this question shall be determined, being a matter affecting the remedy only, and not the validity, form, or effect of the contract, is to be controlled by the lex fori, and not by the lex loci contractus." The insurance company contends that the Court of Appeals erred in holding as above stated; and numerous assignments of errors are contained in the petition for certiorari, but it is not necessary to set them out in detail, as they are all based on the contention that the statutes and decisions of the State of New York, rather than those of Georgia, should determine the effect of alleged false statements made in the application for insurance, the case being tried in the courts of this State.

"The validity, form, and effect of all writings or contracts are determined by the laws of the place where executed." Code of 1933, § 102-108. It is not disputed, and it was so held in the opinion of the Court of Appeals, that the law just quoted applies to the interpretation of the contract involved in the present case. But it is contended by the plaintiff and sustained by the Court of Appeals that as to the remedy for enforcing a right under the contract the lex fori, in this case the law of Georgia, should govern. With these abstract principles of law I readily concur; but as to the application of the lex fori in the present case I must respectfully differ. The basis of my dissent is that before there can be an application of the lex fori there must exist an antecedent right which is capable of enforcement by what is termed adjective or remedial law. The lex fori can apply only with reference to remedies. The lex loci contractus applies with reference to substantive rights. Or, as is often stated, "Substantive law creates, defines, and regulates rights, as

opposed to adjective law, which prescribes the method of enforcing rights or obtaining redress for their invasion." 7 Words and Phrases (3d Series), 249. In the present case the substantive right, if any, in the plaintiff would be the right to recover on the policy of insurance which was issued to her deceased husband and in which she was made the beneficiary. In other words, is the contract of insurance valid, or is it void for reasons stated? The adjective law would be that which prescribes the suitable procedure and remedies to enforce such substantive right as may exist at law. Consequently it is necessary first to determine whether the insurance company has by contract placed itself in such a position that it is liable to the plaintiff. What do we find? The law of New York is that "Every policy of insurance issued or delivered within the State on or after the first day of January, 1907, by any life-insurance corporation doing business within the State, shall contain the entire contract between the parties, and nothing shall be incorporated therein by reference to any constitution, by-laws, rules, applications, or other writings, unless the same are endorsed upon or attached to the policy when issued; and all statements purporting to be made by the insured shall, in the absence of fraud, be deemed representations and not warranties. Any waiver of the provisions of this section shall be void." It has been held as to the substantive law, in Minsker v. John Hancock Life Ins. Co., 254 N. Y. 333 (173 N. E. 4), and Travelers Ins. Co. v. Pomerantz, 246 N. Y. 63 (158 N. E. 21), that "The law of New York is that when a life-insurance policy is delivered to the insured, he must read it (or have the same read to him), and the application forming a part thereof; and if the application does not contain correct answers to the questions asked by the agent of the insurer, the insured is under a duty to so inform the insurer and have the same corrected, and when he fails to do this *a recovery will not be permitted* in an action on the policy by the beneficiary against the insurer, *even though the insurer's agent was informed of the facts* and incorrectly recorded the answers of the applicant." (Italics mine.) The Court of Appeals recognized this substantive law of New York, and further held: "In this case it is undisputed that the insured visited a physician four times during April, 1932, prior to his death in June of that year, when he was suffering from indigestion,-and that the application shows that the question as to whether he had

received medical advice during the past five years was answered in the negative. Under the New York law, as pronounced in the above decisions, a recovery could not be had by the beneficiary on this policy." The above statement and the principle have not been questioned by this court. It necessarily follows that, the plaintiff having no substantive right to enforce, the question of remedial right does not arise. It seems to me that to assert to the contrary would be to contend for a legal fallacy: If the plaintiff has a right under the New York law, she has that right in Georgia. If under the law of New York the plaintiff has no right, she has no right in Georgia. In this instance both contracting parties resided in New York, the contract was signed in New York, the contract was delivered in New York, and the insured died in New York. From the premise above stated it follows, not only as a matter of logic but of law, that if the plaintiff has no right she has no remedy.

But while recognizing the New York law as controlling the validity of the contract, and recognizing the lack of substantive right in the plaintiff under the New York law, the position taken by the majority seems to be tantamount to saying: No right exists in New York, but we are finding the plaintiff a right in Georgia by resorting to an adjective law which provides that in Georgia a jury may pass upon the materiality of misrepresentations; and if it found that such misrepresentations are not material, the plaintiff will have a right to recover, notwithstanding that under a proper construction of the policy he would have no right either in New York or in Georgia. It seems to me that such a ruling would be illogical and unsupported by reason. The court would be overleaping settled law in an effort to give a right which otherwise can not be seriously insisted upon. The basis of the view of the majority of the court, of the alleged right of the plaintiff to maintain an action in Georgia in the present case, seems to be the decision in *Massachusetts Benefit Life Association* v. *Robinson,* 104 *Ga.* 256 (supra). It will be found upon examination, however, that the cited case is not authority for the position taken, and that there is nothing in that case contrary to the fundamental requirement that for the application of adjective law there must exist an antecedent right under *substantive* law. Quite consistently a defendant may in some case be held to the principle of lex fori while at the same time being afforded the benefit of lex loci contractus. But the order

of the application of the two is a very vital factor. As to the right of the plaintiff to recover, it must first be determined how he stands when the lex loci contractus is also put upon him. If he is found without any substantive right, the inquiry necessarily ends. If, on the contrary, he is found to have a substantive right, then and *then only* does the lex fori come into operation. In other words, the latter is subordinate to the first; or, simply stated, no right, no remedy, the converse of the legal maxim, "Ubi jus ibi remedium," where there is a right there is a remedy. There is nothing in the *Massachusetts Benefit Life Association* case which suggests that the lex fori could be applied so far as to permit a holding that a life-insurance company, under a contract executed in New York, may be liable in Georgia notwithstanding that the contract expressly provides for non-liability upon mere false statements of the insured in reference to his physical condition and without reference to the materiality of the misrepresentations. A void contract can not legally be enforced anywhere. If the New York law and the terms of the policy had not made the policy void under the circumstances of the case, certainly the lex fori would govern in an investigation of the materiality of the misrepresentations; and in Georgia, in case of conflicting evidence on that point, the question would be decided by a jury. Mr. Justice Cobb, in the *Massachusetts* case, stood fast to the principle that a substantive right in a party under a contract executed in another State must be protected in Georgia. His remarks as to the lex fori were in reference to the question whether or not the policy should be held to be reinstated, not with reference to any statements made in the *antecedent application* for insurance, but with reference to the application for reinstatement. The right of the plaintiff being protected because of the clause which made the policy incontestable after three years, the statements made in the application for *reinstatement* were immaterial, not with reference to their own falsity, but as to whether they should overthrow a substantive right which had accrued to the insured by reason of three years having elapsed and the policy being thereby rendered incontestable. The lex fori was resorted to only on the question of reinstatement, and because Mr. Justice Cobb regarded it as a *procedural* phase of the case; and whether or not this court agree with him as to it being procedural, it is inescapable that the lex fori was applied on the sole

theory that the inquiry was procedural or remedial. It necessarily follows that what was said is not applicable to the facts of the present case, where the defense of the insurance company is not barred, but where the right of the plaintiff is barred, by the terms of the contract. On the other hand, if it be said that he was laying down a general principle that he meant to be applied to the question of materiality of misrepresentations in an *antecedent* application for a policy of insurance, the non-liability under which could be set up, as distinguished from the case of the defendant in the *Massachusetts Benefit Life Association* case under a policy which was held incontestable by its terms, then what was said is not binding upon this court and is mere obiter.

It is stated in the majority opinion that "Georgia has no such law as the New York statute of 1906. By this last enactment and construction of the court of last resort of New York, the courts are to determine the materiality of all representations made by the applicant for life insurance. By the law of Georgia, the jury are to determine the materiality of such statements as may be made by the applicant for life insurance." It must be remembered that the New York statute was not passed with reference to procedural rights such as are involved in the language just quoted. It was to afford a *substantive* right to life-insurance companies, by providing that the policy shall contain the entire contract between the parties, thus eliminating any oral statements not reduced to writing and incorporated in the policy. Obviously this is independent of any question whether a jury or the court should pass upon the question of materiality of misrepresentations. It is not, by itself or in connection with the two New York decisions hereinbefore mentioned, a subject-matter of comparison with the law of Georgia that a jury shall, where the evidence is conflicting, pass upon such a question. Being so, I do not think there is involved any question of whether the law of New York may be said to be given extraterritorial effect as to adjective or remedial law. As to a contract executed in another State, it is provided in the Code of 1933, § 102-108, that "The validity, form, and effect of all writings or contracts are determined by the laws of the place where executed." The provisions of the New York law above referred to relate to "the validity, form, and effect" of the contract of insurance under consideration, and therefore to such as is comprehended in the Code

section just quoted. For the reasons above given I am of the opinion that the judgment of the Court of Appeals should be reversed.

But, aside from the reasons above given, I am impelled by other considerations to dissent from the majority opinion. It is provided in the Code, §§ 56-820, 56-821: "Every application for insurance shall be made in the utmost good faith, and the representations contained in such application shall be considered as covenanted to be true by the applicant. Any verbal or written representations of facts by the insured to induce the acceptance of the risk, if material, must be true, or the policy shall be void. If, however, the party shall have no knowledge, but shall state on the representation of others, bona fide, and shall so inform the insurer, the falsity of the information shall not void the policy." In § 56-822 it is provided: "A failure to state a material fact, if not done fraudulently, shall not void the contract; but the wilful concealment of such a fact, which would enhance the risk, shall void the policy." In *Phillips* v. *New York Life Insurance Co.*, 173 *Ga.* 135, 138 (159 S. E. 696), it was said: "'Where an applicant for life insurance wilfully conceals from the insurer the fact of a previous illness, such concealment will avoid the policy if the disease was of such a character as to enhance the risk.' *Ætna Life Insurance Co.* v. *Conway*, 11 *Ga. App.* 557 (75 S. E. 915). 'A material representation in an application for life insurance is one that would influence a prudent insurer in determining whether or not to accept the risk, or in fixing the amount of the premium in the event of such acceptance.' *Lee* v. *Insurance Co.*, 158 *Ga.* 517 (123 S. E. 737). It was held in *Mutual Life Insurance Co.* v. *Bolton*, 22 *Ga. App.* 566 (96 S. E. 442) : 'Representations made in an application for insurance which is attached to and made a part of the policy are considered as covenanted to be true by the applicant, and the policy will be voided by any variation which changes the nature, extent, or character of the risk. Any material representation of facts by the assured, to induce the acceptance of the risk, will void the policy if untrue; and while failure to state a material fact will not void a policy unless such failure be fraudulent, a wilful concealment of such a fact, which would enhance the risk, will void the policy.'" It is beyond peradventure that, under the evidence, the insured was bound to know of his physical ill health, and that he sought and obtained medical advice, all of which facts were

denied in his antecedent application for the policy of insurance of which·it was expressly made a part. Neither can it be reasonably contended that a man of his apparently good education, an executive of a tire company, did not know that such facts were very material to the risk·assumed by the company. The truth and materiality of representations are generally questions for the jury; but where all the testimony relating·to a question of fact excludes every reasonable inference but one, the issue becomes an issue of law for determination by the court. *Empire Life Insurance Co. v. Jones,* 14 *Ga. App.* 647 (3) (82 S. E. 62) ; *Mutual Life Insurance Co. v. Bolton,* supra; *Phillips v. New York Life Ins. Co.,* supra; *New York Life Insurance Co. v. Hollis,* 177 *Ga.* 805 (2), 807 (171 S. E. 288). In the case last cited it was held by six Justices: "Under the evidence a finding was demanded that the reinstatement of the policy which had lapsed for nonpayment of a premium should be set aside and canceled, because obtained by untrue answers to questions contained in the application, and because the misrepresentation was as to material facts." It was said, as to a misrepresentation: "If she had had merely headaches and had been treated for those headaches by a physician, the insurance company should have been informed of the fact by a truthful answer to the question contained in her application. A misrepresentation as to whether the insured had been attended by a physician, whether for a headache or other ailment, was material, because the company would, upon being informed that she had been treated many times for headache, have had the right to investigate and ascertain for itself how serious was the ailment for which she had been treated." In the same way, the insurance company in the present case had the right to know of the indigestion for which the insured had been treated, and to investigate and determine what other or more serious ailment might have been the cause of it. The evidence in this case demanded a finding that the misrepresentations were material; and the court should have so found, and erred in referring the matter to the jury.

But it is urged that the wife testified that she was present when the application was taken and signed, and that she heard the insured inform the agent of the company of the fact that he had visited a physician because of indigestion; and it is contended that notice to the agent was notice to the insurance company. In con-

sidering the admissibility of such testimony, I do not think that it is really pertinent to consider the principle of lex fori. It is one thing to resort to that principle when there is a case before the court which admits of explanation of a written contract, and quite another to invoke it when the contract by its express terms shows a vested right in the insurance company. That right in the present case was to be free from liability on the basis of the contract. I can not, therefore, concur in any decision which deprives a party of such a right by an unwarranted resort to the principle of lex fori. Having such a vested right, the insurance company had a *substantive* right which this State is bound to protect. It was well stated long ago by Chief Justice Taney, in Bronson *v.* Kinzie, 1 How. 311, 315, 317 (11 L. ed. 143) : "Whatever belongs merely to the remedy may be altered according to the will of the State, provided the alteration does not impair the obligation of the contract. But if that effect is produced, it is immaterial whether it is done by acting on the remedy or directly on the contract itself. In either case it is prohibited by the constitution. . . It was to maintain the integrity of contracts, and to secure their faithful execution throughout this Union, by placing them under the protection of the constitution of the United States. And it would but ill become this court, under any circumstances, to depart from the plain meaning of the words used, and to sanction a distinction between the right and the remedy, which would render this provision illusory and nugatory; mere words of form, affording no protection, and producing no practical result." What could be the purpose of the testimony of the insured's wife but to seek to overcome this constitutional protection of the vested right in the insurance company, to wit, the right to be free from liability in case the insured made any untrue statements in the *written* application and failed to call the attention of the company to the untruths recorded by the agent when the policy was delivered to the insured? The introduction of the wife's testimony was unwarranted and plainly for the purpose of bringing about some sort of implied waiver or estoppel against the insurer. It is in violation of the constitutional provision as to each State giving full faith and credit to the public acts, records, and judicial proceedings in every other State as provided in article IV, sec. 1, of the Federal constitution. "A State statute is a public act within the meaning of the full faith and

credit clause of the Federal constitution." Bradford Electric Light Co. *v.* Clapper, 286 U. S. 145 (52 Sup. Ct. 571, 76 L. ed. 1026, 82 A. L. R. 696), and cit.

The New York statute which vests the insurance company with the right to be free from liability under the circumstances of this case is, therefore, a public act which this State is bound to protect in its judicial determinations. To permit the wife of the insured to introduce oral testimony to negative the written statements made in the application for insurance would be subversive of the principle above discussed. Nor, under the contract, would notice to the agent bind the principal even if it were true that the applicant had told the agent that he had been troubled with indigestion. The insurance law became a part of the contract of insurance, and, as said above, in sec. 58, c. 326, of the law of New York it was provided that the policy shall contain the entire contract. In Minsker *v.* John Hancock Mutual Life Insurance Co., supra, it was held, in reference to the aforesaid act, that a recovery would not be permitted on the ground that the medical examiner incorrectly stated the applicant's answers, or because the insured was unable to read or neglected to read the policy. The agent who took the application likewise had no authority to waive any of the conditions of the policy, and any statement to the agent contrary to those in the written application would not bind the company. As to the limitations of an agent's power, as decided by this court, see *Hutson* v. *Prudential Insurance Co.,* 122 *Ga.* 847 (50 S. E. 1000); *Vardeman* v. *Penn Mutual Ins. Co.,* 125 *Ga.* 117 (54 S. E. 66, 5 Ann. Cas. 221); *Bank of Commerce* v. *N. Y. Life Insurance Co.,* 125 *Ga.* 552 (54 S. E. 643); *Rome Industrial Insurance Co.* v. *Eidson,* 138 *Ga.* 592 (75 S. E. 657), and cit.; *Reliance Life Ins. Co.* v. *Hightower,* 148 *Ga.* 843, 845 (98 S. E. 469); *New York Life Insurance Co.* v. *Patten,* 151 *Ga.* 185 (106 S. E. 183); *Davis* v. *Metropolitan Life Ins. Co.,* 161 *Ga.* 568 (131 S. E. 490); *Darby* v. *Mutual Benefit Life Insurance Co.,* 165 *Ga.* 516 (141 S. E. 410). Eliminating the testimony of the wife of the insured, there was no conflict in the evidence, and it demanded a finding that the insured made false and fraudulent statements in his written application, and that they were very material to the risk assumed. For the reasons above given, I am of the opinion that the judgment of the Court of Appeals should be reversed.

232

There is nothing in *Mechanics Ins. Co.* v. *Mutual Asso.*, 98 *Ga.* 262, or *Johnson* v. *Ætna Insurance Co.*, 123 *Ga.* 404, 406 (supra), which in any way conflicts with the principles contended for in this dissent. In the *Johnson* case it was expressly recognized that "It has also been held that where a policy contained a stipulation identical with the one in the present case, limiting the power of any agent of the company to make a waiver for the company, and providing that any waiver, to be valid, must be endorsed in writing on the policy, the insured can not in an action on the policy excuse his failure to comply with the conditions of the contract." (Citing.)

Mr. Justice HUTCHESON concurs in this dissent.